(Slip Opinion) Cite as: 569 U. S. ____ (2013) 1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–9953

## JONATHAN EDWARD BOYER, PETITIONER *v.* LOUISIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF LOUISIANA, THIRD CIRCUIT

[April 29, 2013]

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 11–9953

———————

## JONATHAN EDWARD BOYER, PETITIONER *v.* LOUISIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF LOUISIANA, THIRD CIRCUIT

[April 29, 2013]

JUSTICE ALITO, with whom JUSTICE SCALIA and JUSTICE THOMAS join, concurring.

We granted certiorari in this case to decide "[w]hether a state's failure to fund counsel for an indigent defendant for five years, particularly where failure was the direct result of the prosecution's choice to seek the death penalty, should be weighed against the state for speedy trial purposes." Pet. for Cert. i. The premise of that question is that a breakdown in Louisiana's system for paying the attorneys representing petitioner, an indigent defendant who was charged with a capital offense, caused most of the lengthy delay between his arrest and trial. Because the record shows otherwise, I agree that the writ of certiorari was improvidently granted.

In February 2002, petitioner and his brother were hitchhiking in Calcasieu Parish, Louisiana. Petitioner robbed and murdered a driver who picked them up. After enlisting his brother to help him cover up the crime, petitioner fled to Florida, where he was captured about a month later. The evidence of petitioner's guilt was overwhelming. He gave the police a detailed statement describing the murder; his brother, an eyewitness, agreed to testify about the crime; multiple other members of petitioner's family told police that they had heard petitioner confess; and petitioner's fingerprints were found in the

victim's truck.

Louisiana prosecutors announced that they would seek the death penalty, and the state court appointed Thomas Lorenzi, an experienced trial attorney, to serve as petitioner's primary defense counsel. For the next five years, Mr. Lorenzi led petitioner's defense, but he was assisted at all times by at least one highly credentialed but less experienced attorney from the Louisiana Capital Assistance Center (LCAC).

The attorneys from the LCAC were paid by the State, but there was confusion about which branch of the state government was responsible for paying Mr. Lorenzi's fees. The trial court promptly scheduled a hearing on that preliminary matter, but the hearing was repeatedly put off at the urging of the defense. Over the course of more than three years, the defense requested that the hearing be continued on eight separate occasions, causing a total delay of approximately 20 months. The trial court also issued several other continuances without any objection from the defense, delaying the hearing an additional 15 months. And just when it seemed that the hearing would finally be held, Hurricane Rita forced the Calcasieu Parish Courthouse to close.

The trial court held the hearing on March 27, 2006, and at that time it became clear that Mr. Lorenzi's fees could not be fully paid until the start of the next fiscal year. Ten months later, the State broke the resulting impasse by announcing that it would no longer seek the death penalty. That greatly reduced the complexity and cost of petitioner's defense and allowed his case to proceed. Mr. Lorenzi withdrew, and attorneys from the LCAC accepted the role of lead counsel.

From that point, the case proceeded at a plodding pace. Petitioner filed voluminous pretrial motions, took multiple interlocutory appeals, and twice demanded the recusal of the trial judge. The trial court halted proceedings for 11

months after concluding that petitioner was temporarily incompetent to stand trial. At last, despite petitioner's contention that he needed still more time to prepare, the trial began on September 22, 2009. A jury found petitioner guilty of second-degree murder and armed robbery.

In sum, the record shows that the single largest share of the delay in this case was the direct result of defense requests for continuances, that other defense motions caused substantial additional delay, and that much of the rest of the delay was caused by events beyond anyone's control. It is also quite clear that the delay caused by the defense likely worked in petitioner's favor. The state court observed that petitioner's assertions of his speedy trial right were "more perfunctory than aggressive." 2010–693, p. 34 (La. App. 3 Cir. 2/2/11), 56 So. 3d 1119, 1143. And what started out as a very strong case of first-degree murder ended up, after much delay, in a conviction for lesser offenses.

The dissent would ignore what the record plainly shows based largely on the Louisiana Court of Appeals' observation that "[t]he majority of the seven-year delay was caused by the 'lack of funding.'" *Id.*, at 1142. See *post,* at 5, 8 (opinion of SOTOMAYOR, J.). But when this statement is read in context, what it most likely means is not that the delay in question was caused by the State's failure to provide funding but simply that the delay was attributable to the funding issue. And as noted, most of this delay was caused by the many defense requests for continuances of hearings on the issue of funding. If the defense had not sought and obtained those continuances, the trial might well have commenced at a much earlier date—and might have reached a conclusion far less favorable to the defense.*

————————

*The dissent also claims that "Louisiana conceded below that most of the delay resulted from the lack of funding for Boyer's defense." *Post,*

We have before us the same record that was before the Court of Appeals, and the record simply does not support the proposition that much—let alone "most"—of the delay was caused by the State's failure to fund the defense. Having taken up this case on the basis of a mistaken factual premise, I agree with the Court's decision to dismiss the writ as improvidently granted.

––––––––––

at 8; see *post,* at 5, n. 3. But the dissent's only citation is to the State's argument in the alternative that *even if* the legislature's failure to appropriate funds for the defense caused the delay, that delay should not count against the prosecution for purposes of Louisiana's statutory speedy trial requirement. The State in no way conceded that it caused the delay in this case. Indeed, the very next paragraph of the State's brief argued that "the defendant sought to delay the inception of his trial via his funding motion." App. 317a.

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 11–9953

––––––––––

## JONATHAN EDWARD BOYER, PETITIONER *v.* LOUISIANA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF LOUISIANA, THIRD CIRCUIT

[April 29, 2013]

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE KAGAN join, dissenting.

Jonathan Boyer waited in jail for more than seven years from the date of his arrest until the day his case went to trial. The Louisiana Court of Appeal rejected Boyer's claim that this delay violated his right to a speedy trial. In doing so, the court found that most of the delay in Boyer's case was caused by the State's failure to pay for his defense due to a "'funding crisis' experienced by the State of Louisiana." 2010–693, p. 32 (La. App. 3 Cir. 2/2/11), 56 So. 3d 1119, 1142. Nevertheless, the court did not weigh that part of the delay against the State in assessing the merits of Boyer's claim, reasoning that it was "'out of the State's control.'" *Id.,* at 1145.

We granted certiorari to decide whether a delay caused by a State's failure to fund counsel for an indigent's defense should be weighed against the State in determining whether there was a deprivation of a defendant's Sixth Amendment right to a speedy trial. 568 U. S. \_\_\_ (2012). Rather than dismiss the writ as improvidently granted, I would simply address this question. Our precedents provide a clear answer: Such a delay should weigh against the State. It is important for States to understand that they have an obligation to protect a defendant's constitutional right to a speedy trial. I respectfully dissent.

I

The decision below describes the facts as follows. On February 4, 2002, Boyer and his brother were walking by the side of the road in Sulphur, Louisiana. Bradlee Marsh stopped his truck and gave the two men a ride. Once inside the truck, Boyer demanded money. When Marsh refused, Boyer shot him three times in the head and then took some cash and a silver chain from his person. Marsh eventually died of his wounds. On March, 8, 2002, Boyer was arrested in Jacksonville, Florida, and was indicted in Louisiana for first-degree murder on June 6, 2002, in violation of La. Rev. Stat. Ann. §14:30 (West 1997). Louisiana sought the death penalty.

Boyer filed a motion to determine the source of funds for his defense in November 2002. A hearing on the motion was held on August 15, 2003, which was continued until a later date. From that point on, "the only matters that came before the trial court concerned the source of funding." 56 So. 3d, at 1142. Boyer and the State filed numerous continuances over the next two years that further postponed the funding hearing.

On July 7, 2005, Boyer filed a motion to quash the indictment as a violation of his right to a speedy trial under the Louisiana Constitution, the State's speedy trial statute, and the Sixth Amendment.[1] This hearing was itself postponed. Among other things, disruptions caused by Hurricanes Katrina and Rita resulted in further delay. When a hearing on the motion to quash was finally held, defense counsel moved to dismiss Boyer's federal speedy

_____

[1] Under the relevant statute, "no trial shall be commenced . . . [i]n capital cases after three years from the date of the institution of the prosecution." La. Code Crim. Proc. Ann., Art. 578(1) (West 2003). The trial court may dismiss the indictment upon the expiration of the 3-year period. See Art. 581. Boyer brought this motion to quash soon after the limitations period under the statute had elapsed. See 56 So. 3d, at 1142.

trial claim without prejudice.[2]  The trial court denied the motion on November 20, 2006, reaching only Boyer's state-law claims.  It concluded that under Louisiana's speedy trial statute, such delays could not be attributed to the prosecution because they were "beyond [its] control" and rested instead with the "legislature."  App. 703a.  The Louisiana Third Circuit Court of Appeal affirmed.  56 So. 3d, at 1142.

On May 21, 2007, Louisiana amended the indictment to reduce the charge to second-degree murder, which is a noncapital offense.  See La. Rev. Stat. Ann. §14:30.1(B) (West 1997).  The same day, the State filed a bill of information charging Boyer with armed robbery with a firearm, a violation of §14:64.

On January 22, 2008, Boyer filed a second motion to quash the indictment and bill of information on the grounds that the pretrial delay violated his right to a speedy trial under the Louisiana Constitution and the Sixth Amendment.  The trial court denied the motion.  On July 19, 2008, the court found Boyer incompetent to stand trial, but later found his competency restored on April 15, 2009.  A trial commenced on September 22, 2009, more than seven years after Boyer's arrest.  A week later, the jury entered a verdict finding Boyer guilty of second-degree murder and armed robbery.

The Louisiana Third Circuit Court of Appeal affirmed Boyer's conviction, finding, as relevant here, that there had been no violation of Boyer's right to a speedy trial under the Sixth Amendment.  56 So. 3d, at 1139–1145.  Applying our decision in *Barker* v. *Wingo*, 407 U. S. 514 (1972), the court recognized that the more than seven years from the date of arrest to trial was "presumptively

_____

[2] Boyer's counsel moved to dismiss the constitutional claim because he lacked the "resources . . . to be able to prove prejudice [in] an evidentiary hearing."  App. 688a.

prejudicial."  56 So. 3d, at 1144.  It then went on to consider the reason for the delay, and found that the "majority of the . . . delay was caused by the 'lack of funding'" for Boyer's defense.  *Id.,* at 1142.

The court, however, declined to weigh this period of the delay against the State at all for the purposes of its analysis under *Barker.*  56 So. 3d, at 1145.  It found that "[t]he first three years he was incarcerated, [while Boyer] was charged with first degree murder . . . the progression of the prosecution was *'out of the State's control.'"  Ibid.* (emphasis added).  The Louisiana Supreme Court denied review.  2011–0769 (La. 1/20/12), 78 So. 3d 138, 139.

## II
## A

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial."  In *Barker*, we explained that whether there has been a violation of a defendant's right to a speedy trial turns on a balancing test that "compels courts to approach speedy trial cases on an *ad hoc* basis."  407 U. S., at 530. We identified four factors that courts should consider as part of that inquiry.  These include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Ibid.*

While each of the factors is relevant, "[t]he flag all litigants seek to capture is the second factor, the reason for delay."  *United States* v. *Loud Hawk*, 474 U. S. 302, 315 (1986).  We have explained that "different weights should be assigned to different reasons."  *Barker*, 407 U. S., at 531.  "A deliberate attempt to delay the trial in order to hamper the defense" is particularly serious, and "should be weighted heavily against the government."  *Ibid.*  "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for

such circumstances must rest with the government rather than with the defendant." *Ibid.* At the other end of the spectrum, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Ibid.*

## B

The Louisiana court found that the "majority of the seven-year delay" in Boyer's case was caused by the "'lack of funding'" made available for the defense, see 56 So. 3d, at 1142, and I defer to that factual determination, see *Hernandez* v. *New York*, 500 U. S. 352, 366 (1991) (plurality opinion).[3] The question is whether, once the Louisiana court found that most of the delay in Boyer's case was caused by the State's failure to fund Boyer's defense, the court was required to weigh that period of the delay against the State for the purposes of its analysis under *Barker*. The court's conclusion that for the first three years of Boyer's case, the "progression of the prosecution was 'out of the State's control'" makes clear that it did not. 56 So. 3d, at 1145.

Our reasoning in *Barker*, however, requires that a delay caused by a State's failure to provide funding for an indigent's defense must count against the State, and not the accused. As noted, we held there that even a more "neutral reason" for a delay such as "overcrowded courts" should be weighed against the State, because "the ultimate responsibility for such circumstances" lies squarely with the state system as a whole. 407 U. S., at 531. Ap-

---

[3] Louisiana previously conceded that the delay was caused by a lack of funding. See Brief in Opposition to Defendant's Writ Application in No. KW–07–00085 (La. App. 3 Cir.), App. 317a ("In this case, because the defendant was without properly funded counsel for so long, the State simply could not ethically or legally bring him to trial. The indigent defense representation and funding situation is beyond the ability of the State to control"); see also Brief for Louisiana in No. KA–10–693 etc. (La. App. 3 Cir.), App. 198a (same).

plying similar logic, we recently indicated that "[d]elay resulting from a systemic breakdown in the public defender system, could be charged to the State" as well. *Vermont* v. *Brillon*, 556 U. S. 81, 94 (2009) (internal quotation marks and citation omitted).

A State's failure to provide adequate funding for an indigent's defense that prevents a case from going to trial is no different. Where a State has failed to provide funding for the defense and that lack of funding causes a delay, the defendant cannot reasonably be faulted. See *Barker*, 407 U. S., at 531. Placing the consequences of such a delay squarely on the State's shoulders is proper for the simple reason that an indigent defendant has no control over whether a State has set aside funds to pay his lawyer or fund any necessary investigation. The failure to fund an indigent's defense is not as serious as a deliberate effort by a State to cause delay. *Ibid.* But States routinely make tradeoffs in the allocation of limited resources, and it is reasonable that a State bear the consequences of these choices.

The Louisiana court's analysis under *Barker* was therefore based on a critical misapprehension of our precedents: It did not attribute responsibility for the delay to the State, and thus incorrectly applied the factor that we have found to be especially significant. See *Loud Hawk*, 474 U. S., at 315. We have explained that, in every case, "courts must still engage in a difficult and sensitive balancing process," and "none of the four factors [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U. S., at 533. Because the *Barker* factors must be viewed collectively, this error could very well have affected the outcome. "[T]he balance arrived at in close cases ordinarily would not prompt this Court's review," but the Louisiana court's misattribution of the reason for the delay was a "fundamental error . . . that calls for this Court's correc-

tion." *Brillon*, 556 U. S., at 91.

Our precedents therefore point the way to a straight-forward resolution of this case. I take no view as to how the other elements of the *Barker* inquiry should be weighed, or the ultimate issue whether the delay violated Boyer's right to a speedy trial. Instead, I would decide only the narrow question on which we granted certiorari and hold that, under *Barker,* any delay that results from a State's failure to provide funding for an indigent's defense weighs against the State. On remand, the Louisiana court could conduct the *Barker* analysis under the correct legal standard.

## III

Louisiana's primary arguments are either unpersuasive or are more appropriately addressed on remand. They provide no barrier to the Court's resolution of the question presented.

Louisiana's procedures require that capital defendants be appointed two capital-qualified attorneys. See La. Sup. Ct. Rule 31(A)(1)(a) (2012). In Louisiana's view, the fact that there may have been insufficient funds for a second lawyer did not contribute to the delay. See Brief for Respondent 31–33. It contends that these procedural rules did not create an affirmative right to two lawyers, so that Boyer could have forgone the second lawyer at any time and gone to trial if he had so desired. See *id.,* at 32 (citing La. Sup. Ct. Rules 31(A)(1)(a), (B)).

The Louisiana court treated it as a given that Boyer could not proceed to trial during the period of the funding crisis. We therefore have no need to address how these state-law procedures might have affected the overall reason for the delay. Cf. *Mullaney* v. *Wilbur*, 421 U. S. 684, 690–691 (1975); *General Motors Corp.* v. *Romein*, 503 U. S. 181, 187 (1992). To the extent Louisiana disputes the lower court's conclusions about how state-law princi-

ples influenced the delay, these points could have been
addressed in state court on remand. And in fact, Boyer
alleged that there were substantial costs other than the
appointment of a second lawyer, such as the expenses
associated with pretrial investigation, that necessitated
additional resources before any counsel—one or two—
could have gone to trial. App. 377a.

Louisiana also contends that the delay was mostly
attributable to Boyer, because he failed to move the case
forward. Brief for Respondent 28–38. The Louisiana
court did not so find. And Boyer disputes this view; he
contends that statutory procedures and their time limita-
tions under Louisiana law prevented him from bringing
his speedy trial claim any earlier than he did. Tr. of Oral
Arg. 28. In any event, the question of how Boyer's
diligence, or lack thereof, affects the overall balance of
the *Barker* factors would be an appropriate subject for
remand.

JUSTICE ALITO's concurrence largely adopts Louisiana's
arguments, and contends that the majority of the delay
should be attributed to Boyer's requests for continuances
in the trial court, and not the funding crisis. See *ante,* at
3. It is a mistake to second-guess the state court's findings
on this point, particularly because Louisiana conceded
below that most of the delay resulted from the lack of
funding for Boyer's defense. See n. 3, *supra.* Contrary to
the concurrence's assertion, see *ante,* at 3–4, n. 1, this
concession was not made *arguendo.* The most reasonable
reading of the state court's opinion is that it simply ac-
cepted Louisiana's concession when it found that the
"majority of the seven-year delay was caused by the 'lack
of funding.'" 56 So. 3d, at 1142. There is no reason this
Court should comb through the record to allow Louisiana
to turn its back on this prior position, and risk substitut-
ing this Court's judgment for that of a state court on a
question that is closely intertwined with state procedural

rules. These matters of state law are better suited for the Louisiana court to address in the first instance on remand.

Louisiana's arguments accordingly provide no reason to decline to address the question of federal law on which we granted certiorari and which the parties argued.

## IV

The Court's failure to resolve this case is especially regrettable, because it does not seem to be an isolated one. Rather, Boyer's case appears to be illustrative of larger, systemic problems in Louisiana.

The Louisiana Supreme Court has suggested on multiple occasions that the State's failure to provide funding for indigent defense contributes to extended pretrial detentions. See *State* v. *Citizen*, 2004–1841, pp. 14–17 (La. 4/1/05), 898 So. 2d 325, 336–338; *State* v. *Wigley*, 624 So. 2d 425, 429 (La. 1993); *State* v. *Peart*, 621 So. 2d 780, 791 (La. 1993). There is also empirical evidence supporting that assessment. In New Orleans Parish, for example, a recent study found that more than 22 percent of pending criminal cases were more than one year old. Metropolitan Crime Commission, 2011 Orleans Parish Judicial Accountability Report 1 (July 2012). Another study found that the average time between felony arrest and trial in Calcasieu Parish, the jurisdiction where Boyer was tried, was 501 days in the years before Boyer's arrest. M. Kurth & D. Burckel, Defending the Indigent in Southwest Louisiana 27 (2003). More broadly, the public defender system seems to be significantly understaffed. See E. Lewis & D. Goyette, Report on the Evaluation of the Office of the Orleans Public Defenders 28–29 (July 2012) (noting that in New Orleans, public defenders handle approximately 277 felonies per year, which is nearly twice the number recommended by ABA standards (citing ABA Formal Opinion 06–441 (2006))); National Legal Aid & Defender Association, In Defense of Public Access to Justice, An

Assessment of Trial-Level Indigent Defense Services in Louisiana 40 Years After *Gideon* 35, and n. 119 (2004) (estimating that public defenders in Avoyelles Parish handle approximately 792 felony cases per year, or 528 percent of the ABA caseload standard).

Against this backdrop, the Court's silence in this case is particularly unfortunate. Conditions of this kind cannot persist without endangering constitutional rights.

\*     \*     \*

The Louisiana Third Circuit Court of Appeal made a serious error: It did not charge the State's failure to pay Boyer's lawyer against the State in determining whether there was a violation of his right to a speedy trial. Because a State bears the ultimate responsibility for funding adequately an indigent's defense, our precedents require a court to count this delay against the State and not the criminal defendant.

Rather than dismiss the writ, I would answer the question on which we granted certiorari and remand for the Louisiana court to conduct the *Barker* analysis anew. I respectfully dissent from the Court's judgment of dismissal.