# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 123

APRIL TERM, A.D. 2015

September 16, 2015

JASON CHRISTOPHER DURKEE,

Appellant
(Defendant),

v.                                                    S-14-0307

THE STATE OF WYOMING,

Appellee
(Plaintiff).

---

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
> Office of the Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; A. Walker Steinhage, Student Director; Holli Welch, Student Intern.  Argument by Ms. Welch.

*Before BURKE, C.J., and KITE\*, DAVIS, and FOX, JJ, and KAUTZ, D.J.\*\**

*\*Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.*

*\*\*Justice Kautz was a district judge at the time of oral argument.  He was sworn in as a Justice on August 4, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Jason Christopher Durkee was convicted after a jury trial of driving while under the influence of methamphetamine and aggravated vehicular homicide based upon recklessness.  He claims his constitutional right to a speedy trial was violated because 637 days passed between the initial charges and his trial.  Applying the test from *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), we conclude the delay did not substantially impair his right to a fair trial.  We, therefore, affirm Mr. Durkee's convictions.

## ISSUE

[¶2]    Mr. Durkee presents the following issue on appeal, which we rephrase as a question:

> Was Mr. Durkee's constitutional right to a speedy trial violated in a case that took over 630 days between his initial arrest and the case going to trial?

The State's issue is similar, although phrased in greater detail.

## FACTS

[¶3]    On February 21, 2012, Mr. Durkee was delivering food for a Chinese restaurant in Cheyenne, Wyoming.  At approximately 2:30 p.m., he ran a red light and crashed his pickup into Linda Gookin's car.  Mr. Durkee initially told law enforcement he ran the red light because he had a sneezing fit.  Ms. Gookin was declared dead shortly after the collision, and Mr. Durkee provided a blood sample for toxicology testing.  The Wyoming Department of Health tested Mr. Durkee's blood sample and found it was presumptively positive for amphetamine.  The sample was then sent to a Colorado lab for specific methamphetamine testing, which was also positive.

[¶4]    In May 2012, Detective John Pederson of the Cheyenne Police Department informed Mr. Durkee of the blood test results.  Mr. Durkee admitted he smoked methamphetamine for two hours the night before the collision.  He acknowledged he had not slept much, if any, that night, and he was "coming down" or "crashing" from the methamphetamine high at the time of the collision.  During the interview, Mr. Durkee confessed he had lied about the sneezing fit and stated he was actually using the GPS on his cell phone to locate the delivery address when he ran the red light, although he later stated he was only holding the phone.

[¶5]    On July 9, 2012, the Laramie County District Attorney's office charged Mr. Durkee with one count of driving while under the influence of methamphetamine (DUI) in violation of Wyo. Stat. Ann. § 31-5-233(b)(iii)(B) and (e) (LexisNexis 2015) and one

1

count of aggravated homicide by vehicle—DUI, in violation of Wyo. Stat. Ann. § 6-2-106(b)(i) (LexisNexis 2015) or, in the alternative, one count of aggravated homicide by vehicle – recklessness, in violation of § 6-2-106(b)(ii). The district court arraigned him on August 24, 2012, but due to a number of issues that will be discussed in detail below, he was not brought to trial.

[¶6]    On June 5, 2013, Mr. Durkee filed a motion to dismiss for violation of his right to a trial within 180 days after arraignment under W.R.Cr.P. 48. He did not request the charges be dismissed with prejudice or assert he had been prejudiced by the delay. The State agreed the 180 day deadline under the rules of criminal procedure had expired on April 25, 2013, but requested the case be dismissed without prejudice so charges could be re-filed. The district court dismissed the case without prejudice on June 25, 2013. The State re-filed identical charges that same day.

[¶7]    The district court arraigned Mr. Durkee on the new charges on August 30, 2013, and scheduled the trial to commence on November 12, 2013. Prior to that date, Mr. Durkee filed a motion to dismiss for violation of his constitutional right to a speedy trial and a motion to dismiss for "extreme prejudice." Mr. Durkee claimed he was prejudiced because his blood sample taken shortly after the collision had been destroyed by the lab on March 27, 2013, and, therefore, was not available for independent testing by his expert. The district court denied the motions, and Mr. Durkee immediately moved to continue the trial.

[¶8]    Mr. Durkee's trial finally began on April 7, 2014. The trial proceedings took five days and included the testimony of numerous witnesses. The police officers testified as to the nature of the intersection, the crash, Ms. Gookin's injuries, and their interactions with Mr. Durkee. Detective Pederson recounted Mr. Durkee's admissions during the May 2012 interview. Eye witnesses stated that Mr. Durkee was speeding, ran the red light and was using his telephone just prior to the collision. The Wyoming and Colorado lab technicians testified his blood sample tested presumptively positive for amphetamine and methamphetamine. The State's expert toxicologist testified about the effects of methamphetamine on individuals and the ability to drive safely. The State's accident reconstructionist estimated Mr. Durkee's speed at the point of impact was 45 to 52 miles per hour in the 40 mile per hour zone. The reconstructionist also explained that drivers approaching the intersection had a clear view of the traffic light and Mr. Durkee had plenty of time to stop after the light turned yellow and then red. The defense accident reconstructionist estimated Mr. Durkee was traveling between 34 and 44 miles per hour. The reconstructionists agreed there was no evidence Mr. Durkee braked prior to the collision.

[¶9]    The jury found Mr. Durkee guilty of DUI and aggravated homicide by vehicle based upon recklessness but acquitted him of aggravated homicide by vehicle based upon DUI. The district court sentenced him to serve nine to twelve years in prison on the

2

homicide conviction and a concurrent term of 127 days on the DUI conviction. Mr. Durkee filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶10] We review a criminal defendant's assertion that his constitutional right to a speedy trial was violated *de novo*. *Berry v. State,* 2004 WY 81, ¶ 17, 93 P.3d 222, 227-28 (Wyo. 2004), citing *Walters v. State,* 2004 WY 37, ¶ 9, 87 P.3d 793, 795 (Wyo. 2004).

## DISCUSSION

[¶11] The Sixth Amendment to the United States Constitution states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" Art. 1, § 10 of the Wyoming Constitution also guarantees a speedy trial on criminal charges.[1] Claimed violations of the constitutional right to a speedy trial are evaluated under the test announced by the United States Supreme Court in *Barker,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo. 1972). The *Barker* test includes four factors: "1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant." *Berry,* ¶ 31, 93 P.3d at 230-31, citing *Harvey v. State,* 774 P.2d 87, 92 (Wyo. 1989). *See also Ortiz v. State,* 2014 WY 60, ¶ 39, 326 P.3d 883, 893 (Wyo. 2014). "No individual factor is dispositive;" rather, the factors are "considered together and balanced in relation to all relevant circumstances." *Ortiz,* ¶ 39, 326 P.3d at 893; *Berry,* ¶ 31, 93 P.3d at 231.

[¶12] The right to a timely inquiry into criminal charges is fundamental and the charging authority is required to provide a prompt trial. It is self-evident a criminal defendant has no duty to bring himself to trial. *Harvey,* 774 P.2d at 92, 96; *Dickey v. Florida,* 398 U.S. 30, 37–38, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). Thus, the burden is on the State to prove delays in bringing a defendant to trial were reasonable and necessary. *Harvey,* 774 P.2d at 95. "The ultimate question is 'whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial.'" *Berry,* ¶ 31, 93 P.3d at 231, quoting *Warner v. State,* 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo. 2001) (other citations omitted).

### 1. Length of Delay

---

[1] Mr. Durkee does not argue his right to a speedy trial under W.R.Cr.P. 48 was violated. *See Mascarenas v. State,* 2013 WY 163, 315 P.3d 656 (Wyo. 2013) and *Walters v. State,* 2004 WY 37, 87 P.3d 793 (Wyo. 2004) (considering constitutional speedy trial claims without Rule 48 analyses because the appellants only asserted Sixth Amendment violations).

[¶13] "No precise length of delay automatically constitutes a violation of the right to a speedy trial." *Berry,* ¶ 32, 93 P.3d at 231. Instead, the length of the delay is a watershed factor. If the delay is sufficiently lengthy, analysis of the other three factors is required.

> Some delays are so protracted that they must be considered presumptively prejudicial and weighed heavily in favor of the defendant in the balancing inquiry with the other factors. However, other delays are not so long as to be presumptively prejudicial, but still require further analysis of the remaining speedy trial factors.

*Mascarenas,* ¶ 12, 315 P.3d at 661, citing *Berry,* ¶¶ 32–34, 93 P.3d at 231–32. *See also Rhodes v. State,* 2015 WY 60, ¶ 18, 348 P.3d 404, 411 (Wyo. 2015).[2]

[¶14] Under the constitutional analysis, the speedy trial clock begins at the time of arrest or filing of an information or indictment, whichever occurs first. *Ortiz,* ¶ 40, 326 P.3d at 893; *Berry,* ¶ 32, 93 P.3d at 231. In cases where the prosecution dismisses charges and subsequently re-files, the period when a defendant is neither under arrest nor subject to formal charges is not counted in the speedy trial calculation. However, the periods of formal charges are tacked together in calculating the length of delay. *Ortiz,* ¶ 40, 326 P.3d at 893, citing *Boucher v. State,* 2011 WY 2, ¶ 10, 245 P.3d 342, 349 (Wyo. 2011). *See also Rhodes,* ¶ 17, 348 P.3d at 411.

[¶15] The parties' computations of the length of delay in this case are almost identical. The State calculates 637 days between the charging date and trial; Mr. Durkee's calculation of the delay is just one day less, i.e., 636 days. Under our precedent, a delay of this length is considered presumptively prejudicial. For example, in *Harvey, Berry* and *Ortiz, supra,* we found the delays of 562, 720 and 887 days, respectively, were presumptively prejudicial. This speedy trial factor, therefore, weighs against the State and triggers analysis of the other three *Barker* factors.

### 2. Reasons for Delay

---

[2] The Tenth Circuit Court of Appeals uses one year as a touchstone for distinguishing between "ordinary" and "presumptively prejudicial" delays in bringing a criminal defendant to trial. *See United States v. Seltzer,* 595 F.3d 1170, 1176 (10th Cir. 2010). Like this Court, the Tenth Circuit states a finding of presumptive prejudice does not automatically mean a defendant's speedy trial right has been violated, it simply means that the other *Barker* factors must be analyzed. *Id. See also Doggett v. United States,* 505 U.S. 647, 652, n.1, 112 S. Ct. 2686, 2691, n.1, 120 L. Ed. 2d 520 (1992) ("Depending on the nature of the charges, the lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year. We note that, as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." (citations omitted)).

[¶16]   The second speedy trial factor examines the reasons for the delays in bringing a criminal defendant to trial and which party was responsible for the each period of delay. We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable and necessary.  *Harvey,* 774 P.2d at 95.   Certain delays are assigned to the defendant and "may disentitle him to speedy trial safeguards." *Berry,* ¶ 35, 93 P.3d at 232.   These include, "delays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions.'"  *Ortiz,* ¶ 42, 326 P.3d at 893, quoting *Miller v. State,* 2009 WY 125, ¶ 40, 217 P.3d 793, 805 (Wyo. 2009).   With regard to delays allocated to the prosecution, we apply the following analysis:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witnesses, should serve to justify appropriate delay.  *Wehr v. State,* 841 P.2d 104, 112–113 (Wyo.1992), quoting *Barker.*

*Berry,* ¶ 36, 93 P.3d at 232.

[¶17]   The State filed its initial charges against Mr. Durkee on July 9, 2012.  The circuit court scheduled his preliminary hearing for July 17, 2012, but he requested a continuance before eventually deciding to waive his preliminary hearing on August 7, 2012.  Mr. Durkee is responsible for the twenty-one day delay between the original preliminary hearing date and his waiver of the preliminary hearing.  The district court arraigned Mr. Durkee on August 24, 2012, and set his trial to begin November 13, 2012.  At the October 19, 2012, scheduling conference, the district court granted defense counsel's request that the trial be continued so he could retain an expert in accident reconstruction, and rescheduled the trial to begin December 10, 2012.  Mr. Durkee is responsible for the twenty-seven day delay between the original trial date and the rescheduled date.

[¶18]   On November 30, 2012, defense counsel notified the district court Mr. Durkee was missing.  He had cut off his monitoring device and returned it with a note saying he was disappearing.  The district court vacated the December trial setting.  Mr. Durkee was eventually located in Washington and returned to Wyoming on January 23, 2013.  The forty-four day delay between the December 10, 2012, trial setting and when he was returned to Cheyenne is assigned to Mr. Durkee.

[¶19] For unknown reasons, neither Mr. Durkee nor the State requested a trial setting after his return to the jurisdiction, and the district court did not set a new trial date. The court did, however, commence bond revocation proceedings. Mr. Durkee was arraigned for bond revocation on February 8, 2013, and a forfeiture hearing was set for March 1, 2013. The district court continued the bond forfeiture hearing two times, once to accommodate a deposition in a civil case pertaining to the collision and again on the request of defense counsel because of a conflict in his schedule. The district court heard the matter on April 5, 2013, and ordered a portion of Mr. Durkee's cash bond forfeited. Also during this time, Mr. Durkee was sentenced to ninety days in jail for a separate controlled substance conviction.

[¶20] Only later, did the parties consider the speedy trial clock. The State and Mr. Durkee agreed the 180 day deadline under Rule 48 expired in late April 2013, and on June 5, 2013, Mr. Durkee filed a motion to dismiss for violation of his right to a speedy trial under Rule 48. The district court dismissed the first case without prejudice on June 25, 2013.

[¶21] It is difficult to assign responsibility for the 133 days between Mr. Durkee's return to Wyoming and his filing of the motion to dismiss. On one hand, the State always has a responsibility to bring a defendant to trial, *Berry,* ¶ 31, 93 P.3d at 231, and we know of no reason a trial on the original charges could not have been scheduled while other proceedings were pending. On the other hand, defense counsel's schedule and additional proceedings involving Mr. Durkee also contributed to the delay. *See generally* W.R.Cr.P. 48(b)(3)(B) (proceedings on other charges against the defendant are not counted in computing the time for trial under the rules of criminal procedure). Under these circumstances, we conclude the 133 day delay must be attributed equally to the State and the defense.

[¶22] The State re-filed identical charges against Mr. Durkee the same day as the dismissal, June 25, 2013. The district court scheduled an arraignment in the second case for July 19, 2013, but vacated the setting after Mr. Durkee moved to recuse the judge. The district judge referred the recusal motion to another judge but its resolution was delayed because Mr. Durkee initially failed to include the affidavit demonstrating judicial bias or prejudice mandated by W.R.Cr.P. 21.1(b). The alternate judge denied the motion to recuse after a hearing on August 13, 2013. The original district judge arraigned Mr. Durkee on August 30, 2013. Mr. Durkee was responsible for the forty-two day delay resulting from his motion to recuse. *See Ortiz,* ¶ 42, 326 P.3d at 893 (defense pretrial motions are counted against the defendant).

[¶23] The district court scheduled the trial for November 12, 2013. Mr. Durkee filed a demand for a speedy trial on September 4, 2013, and two weeks later he moved to dismiss the case for violation of his constitutional right to a speedy trial. On October 28, 2013, Mr. Durkee filed a second motion to dismiss on the grounds of "extreme prejudice" because his blood sample had been destroyed and he could not, therefore, have it tested

6

by his experts. After the district court denied his motions to dismiss, Mr. Durkee requested a continuance of the November 12, 2013 trial. The State objected, but the district court rescheduled the trial to begin April 7, 2014. This last delay amounted to 146 days (or almost five months).

[¶24] Although a defendant is generally responsible for delays associated with continuances he requests, *Ortiz,* ¶ 42, 326 P.3d at 893, the five month delay gives us pause. Mr. Durkee maintains that not all of the delay was his fault. He asserts a crowded docket was part of the reason for delay, pointing to the district court's statement about the difficulty of scheduling the trial because of its length. As we stated above, responsibility for delays caused by an overcrowded court docket must rest with the government rather than with the defendant, although it is not weighted heavily. *Berry,* ¶ 36, 93 P.3d at 232; *Rhodes,* ¶ 19, 348 P.3d at 411. The record in this case does not, however, demonstrate that the district court's crowded docket was the cause of the lengthy delay between trial settings. In fact, the district judge clearly wanted to prioritize Mr. Durkee's trial and mentioned the option of moving a civil trial in order to accommodate it.

[¶25] Instead, it appears Mr. Durkee needed time for trial preparation and pre-trial matters. He filed several motions prior to the April 2014 trial, including a motion for an order directing the public defender to pay the costs of his expert witnesses, which required a response from the public defender; a motion in limine to exclude the blood draw evidence and any evidence that he was under the influence of methamphetamine; and a motion for additional funding from the public defender for expert witness fees.

[¶26] Under our case law, the defendant is generally charged with delay resulting from defense motions. *See Ortiz, supra.* Nevertheless, Mr. Durkee attempts to place responsibility for the delays associated with his expert witnesses on the State. He claims the State's belated notice of its expert accident reconstructionist forced him to find another expert and, since he did not have sufficient funds to pay the expert, he had to go to the public defender's office to obtain funding. In advancing this argument, Mr. Durkee does not claim the State's expert witness notice was late under the court rules or scheduling orders, nor did he move to have the State's expert witnesses excluded from the trial because of a late designation.

[¶27] Arguing for the continuance of the trial at the November 1, 2013 hearing, defense counsel stated:

> [Defense Counsel]: And, Your Honor, I do move to continue at this time, and mainly based on the issue of whether or not the State will provide funds for my client to hire these experts. These experts have been contacted previously. It has just come to my attention that he had run out of funds, or his family had run out of funds, so that's why we filed that motion. The Public Defender's Office was

7

served and notified, and . . . I've contacted them, and asked them if they would be here, but they're not. . . . So that is, obviously, an outstanding issue.

I'd just put on the record that there [are] now two accident reconstruction reports. Initially, there was one. I believe the responding officer at the scene. And then, just recently, as of, I believe, this week on Wednesday, I think is the day that I received the State's expert opinion on accident reconstruction. It's a total different analysis, and that was received Wednesday. So I just want the record to be clear that I did not receive any information that the State was going outside of what they had already provided [for] hiring a new accident reconstructionist.

THE COURT: They were supplying notices sort of because of my pre-trial order and deadlines, and a new expert, or accident reconstruction specialist was noticed at about that time, just this last week or so?

[Defense Counsel]: Yes. This last week. . . . Concerning the toxicologist they intend to provide, or call, Ms. Stockham, I've never received a report from this person. . . . I've only been notified, I think, in the last day or two, that – I received a pre-trial memo that this person may be a witness, but no report, so I still have no idea what this person is going to say.

So based on that, I do believe that Mr. Durkee does need to respond with experts to these situations, and he needs funds to do so. . . .

[¶28] The State responded as follows:

[Prosecutor]: We would oppose taking [the trial] off the November 12th docket, Your Honor.

Whether or not we noticed the Defendant this week, which again, was in a timely manner, of an additional accident reconstructionist, an additional or alternate toxicologist, in the very first case, Your Honor, the prior docket, again, we have an accident reconstruction. [Defense counsel] was supplied with all that information regarding . . . Officer Trammell's reconstruction early on, I'm sure even

8

before he got our discovery in September, September 11th of this year in the second docket.

Additionally, he was notified about . . . I guess the toxicology report at the same time from the prior case, and then again in discovery September 11th, and the fact that we were going to have a toxicologist. [Mr. Durkee] was objecting to the lab results. He was objecting to [the supervisor of the Colorado lab] weeks ago. So to come in here now and say I didn't know there was a need for a reconstruction expert, or a toxicologist expert for my case until just this week, I just feel is not appropriate, Your Honor, and any request in that regard, I guess, should just be met with a denial. I think we should have the trial on the scheduled date.

[¶29] This exchange puts Mr. Durkee's request for a continuance into context. He apparently was not prepared to go to trial on November 12, 2013. Perhaps he was counting on his motions to dismiss being granted. In any event, Mr. Durkee was certainly aware that the nature of the accident and his use of methamphetamine were going to be important issues at trial. In fact, he requested a continuance of the trial in the first case so he could look into retaining an accident reconstruction expert. Under these circumstances, we will not relieve the defendant of responsibility for the delay associated with the continuance on the grounds that the State did not give him adequate notice of its expert witnesses.

[¶30] Mr. Durkee also asserts the delay associated with obtaining funding for his experts from the public defender's office should be counted against the State. He cites Justice Sotomayor's opinion in *Boyer v. Louisiana,* 133 S. Ct. 1702, 185 L. Ed. 2d 774 (2013) (per curiam), opposing the United States Supreme Court's dismissal of a writ of certiorari as improvidently granted. The issue in that case was "[w]hether a state's failure to fund counsel for an indigent defendant for five years, particularly where failure was the direct result of the prosecution's choice to seek the death penalty, should be weighed against the state for speedy trial purposes." *Id.* at 1702.

[¶31] The majority in *Boyer* ruled the writ was improvidently granted, and Justice Alito noted in his concurring opinion that, although the defendant had waited more than seven years in Louisiana to be tried on second degree murder and armed robbery charges, "the single largest share of the delay in this case was the direct result of defense requests for continuances, that other defense motions caused substantial additional delay, and that much of the rest of the delay was caused by events beyond anyone's control."<sup>3</sup> *Id.* at 1703 (footnote added). Justice Sotomayor insisted delay caused by a state's failure to

---

<sup>3</sup> Some of the delay occurred because Hurricane Rita forced closure of the courthouse.

9

adequately fund an indigent's defense should be weighed against the state and asserted the Court should have addressed that narrow issue instead of dismissing the writ. *Id.* at 1704.

[¶32]   Setting aside the question of whether an opinion dissenting to a dismissal of a writ of certoriari has any precedential value, we conclude Justice Sotomayor's opinion is not relevant to our analysis in the case at bar.  The State did not cause any significant delay in this case by withholding funds for Mr. Durkee's expert witnesses.  He did not file his request for expert witness funding until October 28, 2013, and defense counsel represented to the district court at the November 1, 2013, hearing that he had been in contact with the experts.  The public defender stipulated to providing funding, and the district court entered an order granting the request on November 8, 2013.  Mr. Durkee filed a motion for additional funding on April 8, 2014, and the motion was granted the very next day.  By that time, trial had already commenced.  Under these circumstances where the defense requested the continuance of the trial date over the State's objection, filed several pre-trial motions and obviously had a significant amount of preparation to do after the vacated November 12, 2013 trial date, we conclude Mr. Durkee was responsible for the 146 day delay.

[¶33]   In total, Mr. Durkee was directly responsible for 280 days of the 637 day delay.  Additionally, the 133 day delay preceding his motion to dismiss the first case is partially attributable to him.  The delays wholly and partially attributable to Mr. Durkee amount to 413 of the 637 day total.  With regard to the delays caused by the State, there is no indication the prosecution acted with ill will or with intent to hinder the defense.  *See Ortiz & Berry, supra.*  Under these circumstances, we conclude both the State and the defense should bear responsibility for the delay.  The second *Barker* factor is neutral.

### 3.   Defendant's Assertion of Right to Speedy Trial

[¶34]   The third factor in a constitutional speedy trial analysis is the defendant's assertion of his right to a speedy trial.  Although a defendant is not required to assert his right to a speedy trial, his assertion or failure to assert is a factor for consideration in evaluating a speedy trial claim.  *Berry,* ¶ 45, 93 P.3d at 236, citing *Harvey,* 774 P.2d at 95.  We also consider the vigor with which the defendant claimed his right to a speedy trial in determining the reasonableness of any delay.  *Wehr,* 841 P.2d at 113.

[¶35]   Mr. Durkee did not file a written demand for a speedy trial in the first case, and he made no effort to secure a trial setting during the months following his return from Washington.  In fact, he did not assert his right to a speedy trial until he moved to dismiss the first case pursuant to Rule 48 on June 5, 2013.  That was nearly eleven months after the initial charges were filed against him.

[¶36] The State filed the charges in the second action in June 2013, and Mr. Durkee presented a demand for speedy trial in September 2013. Soon after, he also filed a motion to dismiss for violation of his right to a speedy trial. Contrary to these overt attempts to obtain a prompt trial date, he requested a continuance and acquiesced in the district court's decision to postpone the trial by an additional five months after his motions to dismiss were denied. In fact, the record indicates he needed that time for various pre-trial motions and to secure expert witness testimony. Under these circumstances, we cannot conclude Mr. Durkee vigorously asserted his speedy trial right. This factor weighs in favor of the State.

### 4. Prejudice to Defendant

[¶37] The final factor in the *Barker* analysis measures the prejudice suffered by a criminal defendant from the delay in bringing him to trial. "Although an affirmative demonstration of prejudice is not a prerequisite to establishing a constitutional violation of the right to speedy trial, the question whether the defendant was prejudiced should be considered." *Berry,* ¶ 46, 93 P.3d at 236-27, citing *Harvey,* 774 P.2d at 96 and *Moore v. Arizona,* 414 U.S. 25, 26, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973). Prejudice to a defendant as a result of pretrial delay may consist of: "1) lengthy pretrial incarceration; 2) pretrial anxiety; and, 3) impairment of the defense." *Berry,* ¶ 46, 93 P.3d at 237, quoting *Harvey,* 774 P.2d at 96. The impairment of defense factor is the most serious because it impacts the defendant's ability to prepare his case and skews the fairness of the entire system. *Ortiz,* ¶ 62, 326 P.3d at 896; *Rhodes,* ¶ 20, 348 P.3d at 411.

[¶38] Mr. Durkee quotes *Caton v. State,* 709 P.2d 1260 (Wyo. 1985) and *Berry, supra,* about the prejudicial effects of pretrial anxiety and lengthy incarceration; however, he does not explain how pretrial anxiety and incarceration actually affected him. His bare assertions are insufficient to warrant our consideration of those factors. *Ortiz,* ¶¶ 60-61, 326 P.3d at 896. We note that other factors may have contributed to any anxiety and incarceration Mr. Durkee may have experienced, including his sentence for a different controlled substance violation and his abscondence from bond.

[¶39] Mr. Durkee focuses his argument on the most important prejudice factor, the impairment of his defense as a result of the delay in bringing him to trial. *See Ortiz,* ¶ 62, 326 P.3d at 896. He claims he was prejudiced because his blood sample was destroyed prior to trial and he was unable to have it independently tested. To evaluate this factor, we will provide a synopsis of the facts and course of proceedings pertaining to the blood sample.

[¶40] Ms. Gookin died shortly after the collision on February 21, 2012, and Mr. Durkee provided a blood sample at law enforcement's request. The sample was initially sent to the State of Wyoming's Department of Health where it tested presumptively positive for amphetamine. On March 27, 2012, Mr. Durkee's blood sample was sent to the Colorado

Department of Public Health and Environmental Laboratory Services Division to be analyzed specifically for methamphetamine. Two tests were conducted at that facility. One was an initial screening which was positive for methamphetamine and the other was a confirmatory test that measured the level of methamphetamine in Mr. Durkee's blood. The report generated by the Colorado laboratory stated the blood sample would be stored for one year, after which it would be destroyed unless other arrangements were made.

[¶41] Mr. Durkee received the Wyoming and Colorado lab reports from the State on October 30, 2012. The State's certificate of discovery specifically informed Mr. Durkee:

> Notice of any physical evidence collected in the case is included in the discovery reports provided to defense. . . . If defense counsel wishes to examine any items of physical evidence at any time prior to trial, such arrangements must be made with the custodian of the evidence as noted in the reports.

The Colorado lab destroyed the blood sample on March 27, 2013, in accordance with its policy of storing samples for one year unless other arrangements were made. There is no indication in the record that Mr. Durkee made any effort, prior to the sample's destruction, to have it tested or notified the Colorado lab (or anyone else) that it should be preserved.

[¶42] In the fall of 2013, Mr. Durkee filed a motion to dismiss for violation of his right to a speedy trial and a motion to dismiss for "extreme prejudice." He claimed independent testing of the blood sample was crucial to his defense because the Colorado laboratory that performed the positive methamphetamine tests had closed after being criticized for failing to follow proper procedures and its director having a bias in favor of prosecutors. After hearing the parties' arguments at a hearing held November 1, 2013, the district court denied both motions.

[¶43] Shortly after the district court denied Mr. Durkee's motions to dismiss, he filed a motion in limine to exclude all evidence relating to the blood draw or showing that Mr. Durkee was under the influence of methamphetamine at the time of the collision. As with the earlier motions to dismiss, Mr. Durkee's argument that the evidence should be excluded was based largely on the unavailability of the blood sample for independent testing and the problems with the Colorado laboratory. The district court denied the motion in limine.

[¶44] The trial began as scheduled on April 7, 2014. The State's evidence included Mr. Durkee's admissions about using methamphetamine, not sleeping the night before, and "crashing" or "coming down" from his methamphetamine high at the time of the collision. The presumptive positive blood test results were admitted into evidence,

although the conclusive test which measured the amount of methamphetamine in his blood was not.[4] The State's toxicology expert testified methamphetamine is a stimulant which makes a person very alert and euphoric when first ingested but, when the levels in the bloodstream drop, the user goes into a "crash" phase and becomes extremely fatigued. The toxicologist also stated a user may still be impaired as a result of the drug while in the crash phase.

[¶45] Under these circumstances, we cannot conclude the delay hindered Mr. Durkee's defense. Mr. Durkee was notified the sample was not in the State's custody and the lab would destroy it one year after receipt. He could have arranged for independent testing prior to its destruction or he could have asked that the blood sample be preserved, but he did not. Any prejudice associated with his inability to test the sample was diminished by his admission that he used methamphetamine the night before the collision and the fact that the State did not introduce evidence of the quantity of methamphetamine in his blood at trial.

[¶46] We addressed somewhat similar circumstances in *Strandlien v. State,* 2007 WY 66, 156 P.3d 986 (Wyo. 2007). The defendant was convicted of aggravated vehicular homicide for killing someone while driving intoxicated. *Id.,* ¶ 4, 156 P.3d at 989. We held the defendant was not prejudiced by the delay in bringing him to trial even though his blood sample was destroyed prior to his arrest because he failed to establish additional tests might yield a different result. *Id.,* ¶¶ 17-18, 156 P.3d at 992. As we noted above, Mr. Durkee's prejudice argument is even less convincing because he admitted to using methamphetamine.

[¶47] Furthermore, the jury did not convict Mr. Durkee of aggravated homicide by vehicle based upon the DUI, but rather of aggravated homicide by vehicle based upon his reckless conduct. The jury instruction on that charge stated, in relevant part:

> The elements of the crime of Aggravated Homicide by Vehicle – Reckless, as charged in Alternative Count 1 of this case are:
>
> 1. On or about the 21st day of February, 2012;
> 2. In Laramie County, Wyoming;
> 3. The Defendant, **Jason C. Durkee**;
> 4. Drove a vehicle;
> 5. In a reckless manner;

---

[4] The prosecutors informed the district court they had been unable to serve a subpoena on the lab technician who performed the test measuring a conclusive level of methamphetamine in Mr. Durkee's blood. They conceded that, without the technician's testimony, they would be unable to establish foundation for admission of the conclusive test result. Consequently, only the presumptive tests were admitted into evidence.

13

6. And his conduct is the proximate cause of [the] death of Linda Gookin.

(emphasis in original).

[¶48] The district court also instructed the jury on the definitions of recklessly and proximate cause:

> "Recklessly" is defined as the following conduct: A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
>
> The "proximate cause" of an injury is that cause which in natural and continuous sequence, unbroken by an independent and intervening cause, produces injury, and without which the injury would not have occurred, the injury being the natural and probable consequence or result of the wrongful act. The proximate cause must be a substantial factor in bringing about the injuries or death.

[¶49] The jury could have considered numerous circumstances as evidence of Mr. Durkee's recklessness, including: his admitted ingestion of methamphetamine; his fatigue from having not slept the night before and "coming down" or "crashing" from the methamphetamine high; speeding; researching an address on his cell phone while driving rather than watching the road; and failing to stop or even brake for the red light. In light of the abundant evidence of recklessness, any harm associated with the unavailability of the blood sample was not significant.[5] Given there is no showing that Mr. Durkee was prejudiced by the delay, this factor weighs in favor of the State.

### 5. Balancing the Factors

---

[5]Although Mr. Durkee's argument seems to focus primarily on his right to a speedy trial on the homicide charge, we note he was also convicted of driving while under the influence of methamphetamine to a degree that rendered him incapable of safely driving. Section 31-5-233(b)(iii)(B). For that conviction, the State did not need to prove there was a certain amount of methamphetamine in his system, but only needed to show he was under the influence of the drug to a degree that made him incapable of safely driving. His admission that he used methamphetamine, together with the toxicologist's explanation of how the drug affects a user and the other evidence of his recklessness, satisfied the requirements of the DUI statute. The loss of the blood sample, therefore, did not prejudice his defense on the DUI charge.

14

[¶50] Mr. Durkee relies heavily on *Harvey,* 774 P.2d 87, in arguing that his constitutional right to a speedy trial was violated. We ruled in *Harvey* that a delay of eighteen months in bringing the defendant to trial amounted to a violation of his right to a speedy trial. That is a shorter period of delay than Mr. Durkee experienced. However, we also found that Mr. Harvey was not responsible for any of the delay in that case. *Id.* at 95. That stands in stark contrast to the many delays caused by Mr. Durkee in this case, including his abscondence, requests for continuances of the preliminary hearing and trial, and his many pre-trial motions. Given these differences, we do not find *Harvey* to be particularly helpful in balancing the speedy trial factors here.

[¶51] In this case, the 637 day delay is substantial; consequently, the first factor weighs against the State and in favor of Mr. Durkee. The second factor, the reasons for the delay, is neutral. Mr. Durkee and the State were both responsible for significant portions of the delay. Mr. Durkee did not vigorously or consistently assert his right to a speedy trial, so the third factor weighs in favor of the State. The fourth factor tips the scale in the State's favor. Mr. Durkee's defense simply was not prejudiced by the delay. Under *Barker*, the delay was not unreasonable, i.e., it did not substantially impair Mr. Durkee's right to a fair trial. Mr. Durkee's constitutional right to a speedy trial was not violated.

[¶52] Affirmed.