# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30487

JONATHAN BOYER,

      Petitioner - Appellant

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

      Respondent - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, HIGGINBOTHAM, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Habeas petitioner Jonathan Boyer was convicted of second degree murder and armed robbery with a firearm. He was accused of getting into a truck with his brother, Anthony Boyer ("Anthony"), and shooting the driver dead. Jonathan Boyer later confessed. Seven years after he was arrested, his case went to trial, where Anthony testified for the State. Jonathan Boyer's defense was that Anthony—not Jonathan—pulled the trigger and that Jonathan's confession was false. Jonathan Boyer was convicted and unsuccessfully pursued direct review, including being heard by the United States Supreme Court, which ultimately dismissed the writ of certiorari as

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2017

Lyle W. Cayce
Clerk

No. 16-30487

improvidently granted. Boyer then filed for federal habeas relief, which the district court denied. He now appeals from that denial, making three claims: (1) his Sixth Amendment right to speedy trial was violated; (2) his due process and Confrontation Clause rights were violated when he could not cross-examine Anthony on Anthony's alleged violence; and (3) his rights to present a complete defense and present witnesses were violated when his expert on confessions and interrogations was barred from testifying. We AFFIRM.

## I.

As summarized in the Louisiana appellate court decision affirming Boyer's convictions and sentences:

> Late in the evening of February 4, 2002, Defendant and his brother, Anthony Boyer, were walking along the roadway in Sulphur, Louisiana. They were given a ride by Bradlee Marsh in his truck. Defendant demanded money from Marsh. When Marsh did not comply, Defendant shot him three times in the head. Defendant then took Marsh's money and a silver chain. Marsh died as a result of the gunshot wounds. Defendant was apprehended in Jacksonville, Florida, on March 8, 2002.[1]

Boyer was questioned on the day of his arrest, during which he confessed to killing Marsh. Seven years elapsed between Boyer's arrest and trial. For the first five years, Boyer faced a first degree murder charge, which made him eligible for the death penalty and so also eligible for qualified capital defense. For the following two years, Boyer faced a second degree charge after the State reduced it.

## A.

Summarizing seven years of pretrial proceedings is no simple task. Because the reason for the delay is integral to a speedy trial analysis, we

---

[1] *State v. Boyer*, 2010-693 (La. App. 3 Cir. 2/2/11); 56 So. 3d 1119, 1124.

No. 16-30487

review the record in detail below, with emphasis on the dates. In our review, we detect a common thread: both parties contributed to the delay.

On June 6, 2002, three months after Boyer's arrest, the grand jury issued a bill of indictment on first degree murder charges. The same day, Anthony was indicted for obstruction of justice. On June 10, 2002, the court appointed Tom Lorenzi as Boyer's counsel. Arraignment was scheduled for July 1, 2002, but at request of defense counsel was rescheduled for September 9, 2002. On September 9, 2002, Boyer pleaded not guilty and requested a trial by jury. The court scheduled the trial for February 3, 2003. Around the same time, Anthony pleaded guilty to obstruction of justice.

On November 12, 2002, Attorney Lorenzi submitted a Motion to Determine Source of Funds for Boyer's defense. For the next two and a half years, the court continuously pushed back both the funding hearing and the trial. We note that contrary to the State's insistence during oral argument, it was in agreement with many of the motions to continue. On January 10, 2003, Attorney Lorenzi submitted a letter notifying the court of scheduling problems for the January 17, 2003 hearing. The record indicates that Attorney Lorenzi sought the State's agreement in continuing the hearing. On January 17, 2003, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders a Motion to Determine Source of Funding passed without date." On February 3, 2003, Boyer was determined "available for trial," and Attorney Lorenzi moved to continue without objection from the State. The trial was rescheduled for September 29, 2003.

Defense counsel submitted a motion to continue the funding hearing because "the issue may be deemed premature pending a decision by the 14th Judicial District Indigent Defender Board which will not meet until August 26, 2003 to consider defense counsel's statement for services rendered and a proposed agreement for payment." The motion to continue was granted. The

minutes from August 15, 2003 reflect that "[o]n motion of [the] Asst. District Attorney . . . upon request of defense counsel . . . the Court orders a Motion to Determine Source of Funding refixed for September 19, 2003[.]"

On September 12, 2003, the court ordered that the funding hearing and trial be continued, based on defense counsel's motion "for the reason that the Indigent Defender Board . . . is not scheduled to meet to make a decision critical to the determination of a source of funds until September 30, 2003." The order states that defense counsel "was authorized by . . . [the] Assistant District Attorney, to advise this Honorable Court that the State of Louisiana does not object to the granting of a continuance" on the funding hearing or trial.

From November 2003 to January 2004, the funding hearing was repeatedly continued.[2] On February 9, 2004, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders motions fixed for hearing on April 2, 2004" and moreover, "the State . . . announced its intent to seek the death penalty." On April 2, 2004, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders the Motion to Determine Source of Funding passed without date." On June 21, 2004, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders the Notice of Intent Funding hearing fixed for August 19, 2004[.]"

On August 17, 2004, defense counsel submitted a letter to the court advising that counsel for the Calcasieu Parish Police Jury moved to continue

---

[2] On November 26, 2003, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders the Motion for Funding hearing refixed for December 17, 2003 . . . with the Clerk's Office to notify [defense counsel][.]" On December 17, 2003, the court granted the defense's written motion to continue and the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders the hearing on the defendant's Motion for Funding upset and refixed for January 16, 2004 . . . with the Clerk's Office to notify [defense counsel]." On January 16, 2004, the minutes reflect "[o]n motion of [the] Asst. District Attorney . . . the Court orders the Motion to Determine Source of Funds passed without date."

the funding hearing scheduled for July 19, 2004 due to a family member's medical treatment. Defense counsel noted that he did not oppose the motion. On August 19, 2004, the minutes reflect that the assistant district attorney "advise[d] the Court that a Motion to Continue the funding hearing was previously filed and the funding hearing will be rescheduled at a later date." On July 1, 2005, the minutes reflect that "[o]n motion of [the] Asst. District Attorney . . . the Court orders the funding hearing in this matter refixed for July 15, 2005 . . . with the Clerk's Office to notify defense counsel[.]"

On July 7, 2005, Boyer submitted a motion to quash the indictment based on the state statutory time limit (the "prescription claim") and a constitutional speedy trial violation (the "constitutional claim"). Since it had been more than three years since his indictment, Boyer argued, "the statutory prescription period [under Louisiana law] for the commencement of the trial for the 2002 killing [had] now run." Boyer contended the delay was "due to the state's egregious failure to locate money to pay for Mr. Boyer's defense," and that Boyer "ha[d] filed no motions on his own behalf other than a motion to identify a source of funding as required by *State v. Wigley*, 624 So. 2d 425,426 (La. 1993)." Boyer maintained that the delay also violated his constitutional right to a speedy trial.

On July 15, 2005, the court ordered the funding motion, the motion to enforce the plea bargain, and the motion to quash "refixed without date." Boyer made the motion to continue based on needing sufficient time to issue subpoenas, which the State did not oppose. Almost a week later on July 21, 2005, on the State's motion, the court scheduled the funding hearing to September 22, 2005. Hurricane Katrina struck in August 2005 followed by Hurricane Rita in September 2005, and as a result of difficulties subpoenaing witnesses and contacting co-counsel in New Orleans, the hearing was pushed back again. On February 22, 2006, on the State's motion, the court scheduled

the funding hearing for March 27, 2006. This date—more than three years after defense counsel first filed the Motion to Determine Source of Funding—stuck.

After the funding hearing, during which only defense counsel called witnesses and introduced evidence, the court deferred its ruling and stated it would schedule another hearing for a later date. Defense counsel objected.

On November 20, 2006, a hearing was held on Boyer's Motion to Quash based on the delay, during which Attorney Lorenzi argued only the statutory claim. The defense moved to dismiss without prejudice its constitutional claim, arguing that "to do otherwise makes us even more ineffective counsel by virtue of trying to go forward with the hearing that we cannot be prepared to go forward with." Attorney Lorenzi expressed that his office had been "cobbling together as best [they] [could]," but that it was the State's obligation to fund the defense. An attorney for the State responded that Boyer was not ready to begin trial, and that "[e]verything that's been done to delay this case has been done by the Defense." The State also noted its consideration of amending the charges to second degree murder and armed robbery, which would "greatly decrease the amount of funds that are necessary."

The trial court denied Boyer's motion to quash, finding that the defense had caused the funding motion to be delayed by asking for continuances, and that the motion to determine source of funding constituted a preliminary plea suspending the prescriptive period. Boyer noticed an appeal. The court alternatively denied the motion to quash because the limitation period was interrupted for a cause beyond the state's control.

On January 3, 2007, Boyer appealed to the third circuit court of appeals to challenge the trial court's November 20, 2006 ruling denying his motion to quash. Boyer's arraignment was scheduled for February 26, 2007, but perhaps unsurprisingly by now, was rescheduled for May 21, 2007.

No. 16-30487

## B.

On May 21, 2007, on the State's motion, the court ordered the indictment amended to second degree murder and added a charge for armed robbery with a firearm.[3] Boyer pleaded not guilty and requested a jury trial. On the State's motion, the court set trial for October 29, 2007, to which the defense objected. The court relieved Attorney Lorenzi of his appointment in the case and appointed Attorney James Burks. Attorney Lorenzi requested the court to set a hearing date on the pending funding issue, to which the court instructed Attorney Lorenzi to bill the Indigent Defender Board. On July 19, 2007, the court granted Attorney Burks's motion to withdraw and replaced him with Attorney Lehmann.

Meanwhile, on August 22, 2007, the state appellate court affirmed the trial court's denial of the defense's motion to quash for delay, finding:

> [t]he State's decision to reduce the charge from first degree murder to second degree murder does not reset the time limitation for bringing Defendant to trial. However, the inability to prosecute Defendant because of the lack of funding was a "cause beyond the control" of the District Attorney's Office, and therefore the time limitation had been interrupted. La. Code Crim. P. art. 579(A)(2). Accordingly, there was no error with the trial court's ruling.[4]

On September 21, 2007, Boyer appealed to the state Supreme Court. His argument focused on the prescription issue, but in doing so Boyer also made constitutional arguments. In October 2007, the State responded, also making some constitutional arguments. The Louisiana Supreme Court denied Boyer's application for writ.[5]

---

[3] During oral argument, the State represented that it filed this motion at least in part to solve the funding impasse.

[4] One judge abstained.

[5] *State v. Boyer*, 2007-1896 (La. 11/16/07), 967 So. 2d 526.

7

No. 16-30487

Back in the trial court, with new defense counsel in place, the court proceeded to address a variety of motions, including yet more motions to continue the trial. In September 2007, the defense successfully moved to recuse Judge Ritchie. On December 12, 2007, on the State's motion, the court rescheduled the trial for February 11, 2008.

On January 22, 2008, Boyer filed a second motion to quash the indictment based on violation of his speedy trial right, which included a request for an evidentiary hearing. About a week later, the court held a hearing, during which defense counsel orally requested an evidentiary hearing on his constitutional claim "[t]o submit information about the prejudice that Mr. Boyer has suffered as a result of being denied his Constitutional Right to a speedy trial." The State maintained that the constitutional claim had already been appealed up through the state Supreme Court. The court ordered the State to respond and deferred its ruling.

The defense also renewed its motion to quash based on its prescription claim, to which the court gave the State time to respond. Moreover, the court granted the defense's motion to continue the trial, and rescheduled it for May 19, 2008, despite the State announcing it was ready. The court ordered all pre-trial motions scheduled for hearing on February 22, 2008.

After two additional unopposed continuances, the court convened on April 29, 2008 to address various pre-trial motions. Notably, the court denied Boyer's motion to quash the indictment based on his constitutional claim and his motion to quash based on his prescription claim. Defense counsel did not reassert their request for an evidentiary hearing.

On May 19, 2008, defense moved for supplemental discovery and moved to continue. The court granted the motion to continue and rescheduled trial for September 29, 2008.

8

No. 16-30487

On July 18, 2008, defense counsel expressed concerns about Boyer's competency to proceed that day and his ability to assist, although stated they were not requesting a sanity commission. The court nevertheless appointed a sanity commission. After a competency hearing on August 6, 2008, the court ordered Boyer committed to the Eastern Louisiana Mental Health System and scheduled a status conference in six months. On March 6, 2009, the State moved to re-appoint a sanity commission, which the court ordered in addition to scheduling a contradictory hearing. On April 15, 2009, the court found Boyer competent to proceed to trial, and trial was scheduled for September 21, 2009.

On September 11, 2009, the court convened to consider several motions, including a "Motion in Limine to Exclude Evidence of False Confessions" and a "Motion for *Daubert*[6] Hearing on any Defense Evidence on False Confessions," among others. Defense counsel represented that its expert, Dr. Solomon Fulero, would testify

> to explain what the science of psychology has worked, developed, and knows is an expert science about the existence of false confessions, the factors that create vulnerability in individuals to false confession and the situational factors in interrogations or other circumstances that can lead to false confessions to educate and assist the jury in assessing the weight to be given to the evidence of confessions the State intends to lead in this case.

Defense counsel explained that it did not intend to call Dr. Fulero "to give an ultimate conclusion as to whether this confession and the confessional statements made in this case were false or not." The State responded that false confession evidence was irrelevant, would cause confusion, and would waste time. The State contended that Boyer's confession was already ruled admissible, and it was the jury's role to determine its credibility. Therefore, the State maintained, a *Daubert* hearing was unnecessary.

---

[6] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

No. 16-30487

The court allowed the defense to question Dr. Fulero to establish him as an expert. The State then questioned Dr. Fulero on whether there was a scientifically reliable method to determine if a confession is true or false, to which Dr. Fulero answered there was not, and that that question is for the jury. Defense re-examined Dr. Fulero in an attempt to show "a recognized subspecialty within forensic psychology dealing with the psychology of interrogations and false confessions," given the State's objection to there being "an expert in the field of false confessions." Ultimately, the court accepted Dr. Fulero as an expert in "Forensic Psychology with emphasis in the general field of interrogations and confessions." It further found the *Daubert* standard satisfied, and concluded that Dr. Fulero could testify within certain confines. Although the trial court found Dr. Fulero's testimony admissible, the appellate court later reversed on interlocutory appeal.

On September 21, 2009, the court convened to hear several motions, including Boyer's motion to reconsider his denied speedy trial motion, which was denied.

**C.**

The trial began on September 22, 2009. Several witnesses testified for the State, one of whom was Jonathan Boyer's brother, Anthony. Boyer's defense pointed to Anthony as the actual murderer. During Anthony's cross-examination, defense counsel questioned Anthony about his plea deal with the State for testifying, his felony conviction for obstruction of justice, and his prior misdemeanor charges including one for simple battery. Defense counsel then asked Anthony: "And there was also an incident last year involving your wife, Rhonda; wasn't it?" The State immediately objected, arguing that the credibility of a witness cannot be impeached with a non-conviction. The court heard argument and sustained the objection because there was no pending charge against Anthony.

No. 16-30487

On September 29, 2009, Boyer was convicted of second degree murder and armed robbery with a firearm.[7] The jury was unanimous as to the armed robbery with a firearm count, but eleven-to-one on the second degree murder count. Boyer was sentenced to life in prison without the possibility of parole.[8]

On appeal, the Louisiana Third Circuit Court of Appeals affirmed.[9] We review the state appellate court's reasoning with respect to each of the three claims before us now.[10]

Analyzing Boyer's speedy trial claim pursuant to *Barker v. Wingo*'s four-factor test, the state appellate court held there was no speedy trial violation. The *Barker* factors are: "the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[11] As to the first factor, the state appellate court concluded, "[t]he length of the delay in the instant case was presumptively prejudicial."[12] As to the second factor, it concluded, "[t]he largest part of the delay involved the 'funding crisis' experienced by the State of Louisiana."[13] The state appellate court found that between the charge being reduced to second degree murder in May 2007 through the start of trial in September 2009:

> Defendant filed more than thirty motions to be litigated, including two motions to recuse the trial judge and several evidentiary motions which required testimony from witnesses. However, the motions filed by Defendant appeared to be legitimate motions and not filed for the purpose of delay of trial, and Defendant's

---

[7] *Boyer*, 56 So. 3d at 1124.

[8] *Id.*

[9] *Id.* at 1162.

[10] For purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA), the state appellate court decision is the state court decision that the federal habeas courts review. *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014) ("Under AEDPA, 'we review the last reasoned state court decision.'" (citation omitted)).

[11] *Boyer*, 56 So. 3d at 1139 (referring to *Barker v. Wingo*, 407 U.S. 514 (1972)); *accord United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009).

[12] *Boyer*, 56 So. 3d at 1141.

[13] *Id.* at 1142.

incompetency to proceed to trial for a period of nine months cannot be attributed to either the State or Defendant as a delaying tactic.[14]

As to the third factor, the state appellate court found, "Defendant did not assert his state and federal right to a speedy trial until after the three year statutory prescription had tolled."[15] The court noted that "with more than a year in between the filing of the two motions to quash, Defendant's assertions of the statutory and speedy trial rights were more perfunctory than aggressive."[16] With respect to the fourth and final factor, prejudice to the defendant, the state appellate court reasoned that Boyer did not explain how unavailable witnesses or evidence would have affected his trial, and that Boyer did not explain what job he alleged he lost due to the prosecution.[17] It also noted Boyer's assertions that the delay led to his mental breakdown and impaired effective assistance of counsel, but did not explicitly credit or reject those arguments.[18]

Upon reviewing the four factors, the appellate court concluded that Boyer's right to a speedy trial was not violated. It found the length of time to be "presumptively prejudicial," but concluded, "the remaining *Barker* factors were not present[.]"[19] Notably, the appellate court found that while Boyer was incarcerated based on the first degree murder charge, "the progression of the prosecution was 'out of the State's control' as determined by this court and the supreme court."[20]

---

[14] *Id.* at 1142–43.
[15] *Id.* at 1143.
[16] *Id.*
[17] *Id.* at 1143–44.
[18] *Id.*
[19] *Id.* at 1144.
[20] *Id.* at 1145. Although the appellate court states this was during "[t]he first three years [Boyer] was incarcerated," this is likely a typographical error, given that Boyer was

No. 16-30487

Boyer also appealed the trial court's evidentiary ruling that prohibited Boyer from cross-examining Anthony on the alleged domestic violence and on the lack of charges associated with those allegations. The state appellate court affirmed, concluding:

> that the trial court did not abuse its discretion when it refused to allow Defendant to question the witness about an incident which did not result in a pending charge or conviction and where there was no prospect of prosecution. Louisiana Code of Evidence Article 608(B) provides that "[p]articular acts, vices or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required." Further, any relevance of the domestic abuse complaint was substantially outweighed by the possibility of prejudice, confusion of the issue, or misleading of the jury.[21]

Finally, the state appellate court *reversed* the trial court's ruling regarding Dr. Fulero, referring to its reasoning in its earlier interlocutory decision, which stated:

> Allowing expert testimony regarding "false confessions" invades the province of the jury. The jury is most capable of ascertaining the truth and validity *vel non* of confessions--not experts. Allowing such testimony by incrementally allowing experts to eventually testify as to the guilt or innocence of the defendant cannot be allowed.

## D.

Boyer appealed to the Louisiana Supreme Court, which denied his petition for writ of certiorari. Boyer then appealed to the United States Supreme Court, which granted a writ of certiorari on his speedy trial claim,[22]

---

incarcerated on the first-degree murder charge for the first *five* years, which the state appellate court acknowledges elsewhere in its decision, *Boyer*, 56 So. 3d at 1124.

[21] *Id.* at 1129–30.

[22] *Boyer v. Louisiana*, 133 S.Ct. 420 (2012).

13

specifically on whether a delay in defense counsel funding is attributable to the State for speedy trial purposes.[23] After oral argument, the Court held in a one-line per curiam opinion: "The writ of certiorari is dismissed as improvidently granted."[24]

Justice Alito, joined by Justices Scalia and Thomas, concurred, suggesting that the record showed that most of the delay was caused by the defense, not a systemic breakdown in Louisiana's payment to counsel:

> The attorneys from the [Louisiana Capital Assistance Center] were paid by the State, but there was confusion about which branch of the state government was responsible for paying Mr. Lorenzi's fees. The trial court promptly scheduled a hearing on that preliminary matter, but the hearing was repeatedly put off at the urging of the defense. Over the course of more than three years, the defense requested that the hearing be continued on eight separate occasions, causing a total delay of approximately 20 months. The trial court also issued several other continuances without any objection from the defense, delaying the hearing an additional 15 months. And just when it seemed that the hearing would finally be held, Hurricane Rita forced the Calcasieu Parish Courthouse to close.[25]

Justice Sotomayor, joined by Justices Ginsburg, Breyer, and Kagan, dissented, explaining that the state appellate court found that the delay was due to lack of funding.[26] The dissent reasoned that *Barker* "requires that a delay caused by a State's failure to provide funding for an indigent's defense must count against the State, and not the accused."[27] It recited *Barker's* language directing that a "neutral reason" for delay, like "'overcrowded courts'" should be weighed against the State, because 'the ultimate responsibility for

---

[23] *Boyer v. Louisiana*, 133 S. Ct. 1702, 1702 (2013) (per curiam) (Alito, J., concurring).
[24] *Id.* (majority opinion)
[25] *Id.* at 1703 (Alito, J., concurring).
[26] *Id.* at 1708 (Sotomayor, J., dissenting).
[27] *Id.* at 1706.

such circumstances' lies squarely with the state system as a whole."[28] It also cited *Vermont v. Brillon*,[29] stating that the Court there applied "similar logic," in indicating that "'[d]elay resulting from a systemic breakdown in the public defender system, could be charged to the State' as well."[30] The dissent reasoned that a state's failure to fund indigent defense is "no different."[31]

Thereafter, Boyer sought federal habeas relief in the federal district court, which was denied.[32] A certification of appealability was granted. Of his five claims of error in his original habeas petition, Boyer presses three on appeal: (1) the Sixth Amendment speedy trial claim; (2) the claim concerning the exclusion of evidence about Anthony's alleged violence; and (3) the claim concerning the exclusion of Boyer's confessions and interrogations expert.

## II.

The district court had jurisdiction under 28 U.S.C. § 2254, and this Court has jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. "We review the district court's findings of fact for clear error and review its conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court."[33] Additionally, "[f]ederal habeas proceedings are subject to the rules prescribed by [AEDPA]."[34] Thus, a federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[28] *Id.* (citation omitted).

[29] 556 U.S. 81 (2009).

[30] *Id.* (citation omitted).

[31] *Id.* at 1706–07 (citation omitted).

[32] The State stated that Boyer's April 29, 2014 petition was timely filed and adequately exhausted. On January 14, 2016, the Magistrate Judge recommended the petition be denied. Over Boyer's objections, the district court adopted the Report and Recommendation.

[33] *Higginbotham v. Louisiana*, 817 F.3d 217, 221 (5th Cir. 2016) (per curiam) (quoting *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007)).

[34] *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citing 28 U.S.C. § 2254).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[35]

"This is a 'difficult to meet,' and [a] 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"[36] Under 28 U.S.C. § 2254(d)(1), the "'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[37] Furthermore, "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning."[38] "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court[,] . . . if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts[,]"[39] or "if the state court applies a rule different from the governing law set forth in our cases[.]"[40] "A state court's decision constitutes an unreasonable application of clearly established federal law if it is 'objectively unreasonable.'"[41]

---

[35] 28 U.S.C. § 2254(d).

[36] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

[37] *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (citations omitted); *accord Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam) ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[38] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted).

[39] *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08 (2000)).

[40] *Bell*, 535 U.S. at 694 (citation omitted); *accord Gray*, 616 F.3d at 439.

[41] *Gray*, 616 F.3d at 439 (citing *Williams*, 529 U.S. at 409).

No. 16-30487

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[42] "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'"[43]

## III.

## A.

We begin with Boyer's speedy trial claim. The Sixth Amendment guarantees the right to a speedy trial.[44] In analyzing whether this right has been violated, the Supreme Court in *Barker v. Wingo* adopted "a balancing test, in which the conduct of both the prosecution and the defendant are weighed."[45] The *Barker* Court identified four factors for a court to assess: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[46]

Boyer asserts that waiting five years for effective appointment of counsel and seven years before trial violates his right to a speedy trial.[47] He argues the

---

[42] *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting 28 U.S.C. § 2254(d)(2)).

[43] *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

[44] The Sixth Amendment states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

[45] *Barker*, 407 U.S. at 530.

[46] *Id.*

[47] At times Boyer also asserts the decision violated his due process rights, but does not elaborate on this assertion.

17

delay was caused by the "systemic breakdown" of Louisiana's indigent defense system, which, for speedy trial purposes, is attributable to the state. Among other cases, Boyer points to the dissent in *Boyer v. Louisiana* (his case on direct appeal), which found the state appellate court's *Barker* analysis to be "based on a critical misapprehension of [Supreme Court] precedents."[48] Additionally, Boyer claims he is entitled to an evidentiary hearing on the matter.[49]

The State responds that Boyer was always represented by counsel, and that this Court has no need to grant relief that the U.S. Supreme Court has already rejected. The State claims that the state appellate court's analysis was proper under *Barker v. Wingo*.[50] Although the State acknowledges that lack of funding posed problems below, it also argues that Hurricanes Katrina and Rita complicated the "troubled" funding system. Finally, the State rejects Boyer's entitlement to an evidentiary hearing because, even if there was a factual dispute as to one factor, it argues, "none of the other *Barker* factors are present."

In *Goodrum v. Quarterman*, we explained that "[b]ecause the state appellate court properly identified the *Barker* test as the framework for analyzing Goodrum's speedy trial claim, AEDPA limits our focus to the objective reasonableness of the result of the state court's balancing of the *Barker* factors under the facts in Goodrum's case."[51] "Nonetheless," like in *Goodrum*, "to facilitate our evaluation of the reasonableness of the state court's

---

[48] Quoting *Boyer*, 133 S. Ct. at 1707 (Sotomayor, J., dissenting).

[49] During oral argument, Boyer's counsel summarized other cases occurring in the time period of Boyer's pretrial, which he urged help explains the delay. He argued that Attorney Lorenzi could testify to such proceedings at an evidentiary hearing.

[50] Indeed, the State adopted the reasoning of the state appellate court.

[51] *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (citations omitted).

decision, we will conduct a limited review of the state court's analysis of each *Barker* factor."[52]

Regarding the first *Barker* factor of length of delay, the state appellate court found Boyer's seven year pre-trial incarceration to be "presumptively prejudicial."[53] This was the only of the four factors that the state appellate court found was "present." Regarding the second factor, the reason for the delay the state appellate court concluded, "[t]he majority of the seven-year delay was caused by the 'lack of funding.'"[54] The court also found "the motions filed by Defendant appeared to be legitimate motions and not filed for the purpose of delay of trial."[55] Regarding the third *Barker* factor, the defendant's assertion of his speedy trial right, the state appellate court concluded that Boyer's "assertions of the statutory and speedy trial rights were more perfunctory than aggressive."[56] And regarding the fourth and final *Barker* factor, prejudice to the defendant, the state appellate court questioned Boyer's claims that he was prejudiced by the delay in the form of his lost job, mental breakdown, loss of evidence, and denial of effective assistance of counsel. For instance, the court found, "[e]xcept for . . . two witnesses . . . Defendant did not

---

[52] *Id.*

[53] *Boyer*, 56 So. 3d at 1141. "[T]he length of the delay[] consists of a two-part inquiry. First, the delay must be extensive enough to give rise to a presumption of prejudice that triggers examination of the remaining *Barker* factors . . . If this threshold showing is made, the court must examine the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis, because 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Goodrum*, 547 F.3d at 257–58 (citations omitted) (2 ½ year delay presumptively prejudicial and reasonably weighed "heavily" in defendant's favor).

[54] *Boyer*, 56 So. 3d at 1142.

[55] *Id.* at 1142–43 (also noting the "Defendant's incompetency to proceed to trial for a period of nine months cannot be attributed to either the State or Defendant as a delaying tactic").

[56] *Id.* at 1143.

reveal the contents of the unavailable witnesses' testimonies or how the evidence would have affected the outcome of the trial."[57]

The "determinative question" is "whether the state court unreasonably concluded that the balance of all four *Barker* factors in this case does not establish a violation of the speedy trial right."[58] We find that the state appellate court's conclusion was not unreasonable. Regarding the first factor, the state appellate court found that the length of delay was presumptively prejudicial, which is reasonable given the seven year time period between arrest and trial.[59] Regarding the third and fourth factors—Boyer's assertion of his right and prejudice—Boyer argues that he "asserted his claim at the earliest procedural opportunity available under Louisiana law for a defendant unable to assert his readiness to proceed to trial."[60] Moreover, Boyer did not have fully-funded counsel for the first years of his pre-trial custody, as the state appellate court decision implicitly acknowledges.[61] Although jurists could disagree with the state appellate court's decision finding these factors not "present," they are not objectively unreasonable. A reasonable jurist could draw such conclusions based on the timing of Boyer's motions to quash,[62] and

---

[57] *Id.* (citation omitted).

[58] *Goodrum*, 547 F.3d at 265.

[59] *Doggett v. United States*, 505 U.S. 647, 652 (1992) ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time."); *accord id.* at 655–56 (recognizing "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify" and that the importance of presumptive prejudice "increases with the length of delay" (citation omitted)).

[60] Citing LA. C. CR. P. ART. 578(A); LA. C. CR. P. ART. 701(F).

[61] *Boyer*, 56 So. 3d at 1143 ("During the three-year time limitation period the only consideration addressed was the funding issue.").

[62] For example, the state appellate court correctly pointed out that there was "more than a year in between the filing of the two motions to quash[.]" *Id.* Moreover, Boyer dismissed his motion to quash based on a constitutional violation during the November 20, 2006 hearing and did not reassert it again until January 2008.

the arguable lack of concrete prejudice that Boyer has shown.[63] Accordingly, the state appellate court's decision with respect to the first, third, and fourth *Barker* factors is not objectively unreasonable.

The state appellate court errs, however, in its analysis of the second factor. The reason for the delay is "[t]he flag all litigants seek to capture[.]"[64] "*Barker* instructs that 'different weights should be assigned to different reasons,' and in applying *Barker*, we have asked 'whether the government or the criminal defendant is more to blame for th[e] delay.'"[65] While "[d]eliberate delay 'to hamper the defense' weighs heavily against the prosecution[,]"[66] "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[67] On system-wide causes for delays, the Supreme Court has noted that "[d]elay resulting from a systemic 'breakdown in the public defender system,' could be charged to the State."[68] The state appellate

---

[63] For example, Boyer argues that he "presented affidavits from counsel's lead investigator demonstrating that as a result of the delay [several] important witnesses were unavailable." However, the state appellate court found that Boyer "did not relate the substance of the missing witnesses' anticipated testimonies either at the April 19, 2008 hearing on his January 2008 motion to quash or in brief to [that] court. Except for . . . two witnesses [whose statements were deemed to be inadmissible hearsay], Defendant did not reveal the contents of the unavailable witnesses' testimonies or how the evidence would have affected the outcome of the trial." *Boyer*, 56 So. 3d at 1143 (citation omitted)). Such reasoning is not objectively unreasonable.

[64] *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

[65] *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 531; *Doggett*, 505 U.S. at 651).

[66] *Id.* (citation omitted).

[67] *Barker*, 407 U.S. at 531 (1972); *accord Doggett*, 505 U.S. at 657 ("Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.").

[68] *Brillon*, 556 U.S. at 94 (citation omitted).

21

court found that Boyer's motions were not filed with the intention of delay,[69] and in fact the majority of the delay was caused by funding problems.[70] This lack of funding should have been weighed against the state. Instead of doing so, the state appellate court found that "the progression of the prosecution was 'out of the State's control," and noted "there [was] nothing before this court to suggest that the State acted to delay the trial to gain any advantage."[71] This failure misapplied Supreme Court precedent.[72] Still, because there is no evidence of deliberate delay, the State's funding problems do not weigh heavily against the State.[73] This dampens the error's effect on the overall outcome of the balancing test.

Importantly, "the state court's preliminary conclusions regarding one or more of the factors, even if contrary to or objectively unreasonable in light of controlling Supreme Court precedent, are insufficient to grant habeas relief, so long as we find the ultimate decision reached by the state court not objectively unreasonable."[74] Here, although the state appellate court erred by failing to weigh the lack of funding against the State in its speedy trial analysis, this error does not satisfy AEDPA's requirements for habeas relief under 28 U.S.C. § 2254(d)(1). "'[F]airminded jurists could disagree' on the correctness of the state court's decision"[75] that the balance of the four *Barker* factors did not result in a speedy trial violation. The state appellate court's conclusions on the

---

[69] *Boyer*, 56 So. 3d at 1142–43.

[70] *Id.* at 1142.

[71] *Id.* at 1145.

[72] The district court made the same error when it stated, "the funding issue, a major cause of delay, was not attributable to the prosecution or the trial court."

[73] *Barker*, 407 U.S. at 531; *accord Goodrum*, 547 F.3d at 258 ("Between these extremes fall unexplained or negligent delays, which weigh against the state, 'but not heavily.'" (citation omitted)).

[74] *Goodrum*, 547 F.3d at 257 (citation omitted).

[75] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough*, 541 U.S. at 664).

22

first, third, and fourth factors were reasonable, and its error on the second factor did not so severely alter the scales that we can say the resulting balance was "objectively unreasonable."

Turning to § 2254(d)(2), despite some of his brief headings asserting the state appellate court's decision was "based on an unreasonable determination of the facts," Boyer does not elaborate on why this is the case. He therefore abandons the argument.[76] But in any case, the argument fails. First, Boyer's challenge is less a challenge to the factual basis of the state appellate court's decision than it is to its legal analysis.[77] Indeed, the appellate court's most obvious error—failing to weigh the lack of funding against the State in its speedy trial analysis—is a legal one. Furthermore, Boyer has not rebutted any challenged factual findings "'by clear and convincing evidence.'"[78] Boyer thus cannot obtain habeas relief under 28 U.S.C. § 2254(d)(2).

Finally, Boyer claims he requested an evidentiary hearing in both state and federal court to determine how the lack of funding affected the seven-year delay, and that the district court erred by not granting him such a hearing. We conclude that an evidentiary hearing is not warranted on the question whether the delay was caused by the lack of funding. The state appellate court decision found that it was,[79] and that factual finding is due deference under 28 U.S.C. § 2254(e)(1)[80] notwithstanding the conclusion of three Supreme Court justices

---

[76] *Davis v. Davis*, 826 F.3d 258, 266 (5th Cir. 2016) ("Issues submitted to this Court that are inadequately briefed are considered abandoned." (citation omitted)); FED. R. APP. P. 28(a)(8)(A) (argument on appeal must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

[77] *Burt*, 134 S. Ct. at 15.

[78] *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

[79] *Boyer*, 56 So. 3d at 1142.

[80] 28 U.S.C. § 2254(e)(1) provides: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

to the contrary.[81] We note that in that decision the Supreme Court was not constrained by AEDPA's deference requirements. "We may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'"[82] "Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference. If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's ... determination."[83] And importantly, "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review."[84] Furthermore, "when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"[85] Since the claim is barred under § 2254(d) for the reasons explained above, this also settles the matter.

## B.

We next turn to Boyer's claim regarding Anthony's testimony. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."[86] "This latitude, however, has limits. Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the

---

[81] *See Boyer*, 133 S. Ct. at 1703 (Alito, J., concurring) ("In sum, the record shows that the single largest share of the delay in this case was the direct result of defense requests for continuances, that other defense motions caused substantial additional delay, and that much of the rest of the delay was caused by events beyond anyone's control.").

[82] *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

[83] *Id.* (internal quotations and citations omitted).

[84] *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001) (footnote omitted).

[85] *Pinholster*, 563 U.S. at 183 (citation omitted); *accord id.* at 185 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief.").

[86] *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."[87] "This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary or disproportionate to the purposes they are designed to serve.'"[88] "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[89]

Boyer challenges the state appellate court's affirmance of the trial court's exclusion of cross-examination on Anthony's violence and the prosecution's decision not to pursue charges. Boyer argues that he was "entitled to present the excluded evidence to show that Anthony's demonstrated violent tendencies rendered it more probable that he shot Mr. Marsh." Boyer urges that Anthony's assault was serious, hospitalizing the victim and requiring staples to be put in her head. Boyer argues that this evidence was especially pertinent since its defense pointed the blame at Anthony. Moreover, Boyer complains, "the defense had no opportunity to ask Anthony Boyer whether his perception was such that he believed he had to cooperate with the state or face future criminal charges." Boyer further asserts that the state appellate court's decision unfairly relied on the State's representations that "there was no prospect of prosecution." Similarly, Boyer avers that if the evidence is permissibly excluded on the basis of there being no charges, "the same government agency

---

[87] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citations and quotation marks omitted).

[88] *Id.* at 324–25 (citing *Scheffer*, 523 U.S. at 308; other citation and quotation marks omitted).

[89] *Id.* at 326 (citations omitted).

that is prosecuting a defendant could be granted plenary authority over the admissibility of evidence impeaching its star witness by the manipulation of its charging authority."

The State counters that Boyer's attempt to cross examine Anthony about his violent tendencies is prohibited under Louisiana law. That law, the State explains, is the Louisiana Code of Evidence Art. 609.1(B) which provides in part:

> Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.

The State reasons that because Anthony was not charged with or convicted of a crime in relation to the domestic violence incident, Boyer was properly barred from cross-examining on that topic. Furthermore, the State maintains that any error was harmless, given the strength of its case against Boyer, noting in particular the audiotaped confession.

Although Article 609.1 generally only allows evidence of offenses for which a witness has been convicted,[90] an exception allows evidence "to establish a witness' bias or interest that may arise from arrests, pending criminal charges, or the prospect of prosecution."[91] Despite recognizing this exception,[92] the state appellate court affirmed the trial court's ruling.[93] The

---

[90] *Boyer*, 56 So. 3d at 1127.

[91] *Id.* at 1128; *see also* LA. CODE EVID. ANN. ART. 607(d) ("Except as otherwise provided by legislation: (1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.").

[92] *Id.* at 1129 ("A witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct." (citing *State v. Vale*, 95–1230, p. 4 (La. 1/26/96), 666 So.2d 1070, 1072)).

[93] *Id.*

appellate court noted that Anthony had already testified about his obstruction of justice conviction in relation to the case, stated that he was testifying as part of a plea agreement, and acknowledged that the DA had the ability to revoke his probation.[94] It also reasoned that the relevance of the domestic violence evidence was "substantially outweighed by the possibility of prejudice, confusion of the issue, or misleading of the jury."[95]

Boyer is correct that criminal defendants have the right to present a complete defense, but he has not pointed to a Supreme Court case with which the state court decision directly conflicts. For instance, Boyer cites *Alexander v. United States*[96] for the principle that "[e]vidence of acts or statements of another that have a legitimate tendency to show he could have committed the murder are admissible." But this case makes no mention of the Confrontation Clause, cross-examination, or the rules of evidence at issue in Boyer's case. In fact, *Alexander* recognizes the discretion afforded to the trial judge on matters of excluding evidence suggesting third-party guilt.[97] Boyer cites *United States v. McClure*[98] for the proposition that "[v]iolent propensities of a third party are admissible where it is alleged that the third party acted violently in the instant case." But this case is inapposite. As the district court correctly pointed out, "in *McClure* the third party's prior violent acts were admitted not to show that he had acted violently again but instead that the defendant had a lack of criminal intent because he was being intimidated by the third party." Boyer also points to *Chambers v. Mississippi*[99] for the proposition that "[w]here constitutional rights directly affecting the ascertainment of guilt are implicated, state rules

---

[94] *Id.*

[95] *Id.* at 1130.

[96] 138 U.S. 353 (1891).

[97] *Alexander*, 138 U.S. at 356.

[98] 546 F.2d 670 (5th Cir. 1977).

[99] 410 U.S. 284, 302 (1973).

of evidence may not be applied mechanistically to defeat the ends of justice by excluding evidence tending to show a third party's guilt." But *Chambers* concerned hearsay, and Boyer does not attempt to argue that the state appellate court decision was directly opposed to it.

On Boyer's claim that he was unconstitutionally excluded from cross-examining Anthony on the lack of prosecution for the alleged domestic violence, Boyer relies on *Davis v. Alaska*.[100] This case reiterates that exposing a witness's bias is part of the right to cross examine.[101] Specifically, the Supreme Court reversed a ruling that prohibited a defendant from cross-examining a prosecution witness about possible bias based on "the witness' probationary status as juvenile delinquent."[102] Though this case lends support to Boyer's general claim, the state appellate court decision was not contrary to the holding in *Davis*; unlike in *Davis*, Boyer wished to cross-examine Anthony on allegations of violence that had not resulted in prosecution. The state appellate court decision was not contrary to clearly established Supreme Court law.

Nor did it involve an unreasonable application of Supreme Court law. "The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.'"[103] However, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes

---

[100] 415 U.S. 308 (1974).

[101] *Davis*, 415 U.S. at 316–17 ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (citations omitted)).

[102] *Id.* at 309.

[103] *Chambers*, 410 U.S. at 295 (citation omitted).

in case-by-case determinations."[104] Although defendants have well-established rights to cross-examination, the right is not unlimited,[105] and may be constrained by the rules of evidence.[106]

Boyer states that "[i]n Louisiana, propensity evidence of third parties is not barred by La. C.E. art 404(B)."[107] Indeed, some Louisiana appellate courts have held that "the prohibition against other crimes evidence only contemplates reference to other crimes by the accused."[108] However, a different rule of evidence, 609.1(B) states that "[g]enerally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal."[109] Under this rule, cross-examination on Anthony's alleged violence would be inadmissible. Still, an exception explained in *State v. Vale*[110] may allow inquiry into such matters in order to show a witness's motivations or bias in testifying for the State. The Louisiana Supreme Court explained, "to the extent exposure of a witness's motivation is a proper and important function of the constitutionally protected right of cross-examination, a witness's 'hope or knowledge that he will receive leniency from the state is highly relevant to establish his bias or interest.'"[111] It continued that "[a] witness's bias or

---

[104] *Yarborough*, 541 U.S. at 664 (citation omitted).

[105] *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005) (per curiam)

[106] *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

[107] Citing *Boyer*, 56 So.3d 1119, 1128–29.

[108] *State v. Mims*, 97-1500 (La. App. 4 Cir. 6/21/00), 769 So. 2d 44, 75 (citations omitted).

[109] LA. CODE EVID. ANN. ART. 609.1. LA. CODE EVID. ANN. ART. 608(B) states that "Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required."

[110] 95-1230 (La. 1/26/96), 666 So. 2d 1070 (per curiam).

[111] *Vale*, 666 So. 2d at 1072 (citations omitted).

interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the state regarding his conduct."[112] A subsequent Louisiana Supreme Court case, *State v. Goodlow*,[113] suggests that such evidence may overcome the restrictions in Rule 609.1(B).

As an initial matter, Boyer complains that "the trial court erroneously ruled that defense evidence of other crimes of third parties would be admissible only if it met one of the exceptions in La. C.E. 404(B)(1)," but he cites a part of the hearing transcript where the parties debate the admissibility of character evidence of the victim, Bradley Marsh. This aside, the main difficulty in Boyer's argument is that he attempted to offer the domestic violence evidence not only to show bias, but also to argue that Anthony was capable of pulling the trigger. Boyer does not shy away from this motivation. In his brief he argues, "Boyer was denied full cross-examination of Anthony Boyer that would have shown, if its damaging potential was fully realized, that he was an extremely violent man more than capable of having been the killer in this case." Assuming *arguendo* that the state appellate court erred by barring the evidence under rules 608 and 609 in light of the rule explained in *Vale*, the state appellate court also held that "any relevance of the domestic abuse complaint was substantially outweighed by the possibility of prejudice, confusion of the issue, or misleading of the jury."[114]

This is not to say that this Court would find similarly if faced with the issue in the first instance. But that is not the standard AEDPA requires. A judge could reasonably find that any relevance of Anthony's bias from not being prosecuted for the domestic violence was substantially outweighed by the

---

[112] *Id.*

[113] 2000-3488 (La. 11/21/01), 801 So. 2d 1065.

[114] *Boyer*, 56 So. 3d at 1130.

possibility that the evidence would in effect be understood by the jury as pointing the blame for the murder at Anthony. The reasonableness of such a conclusion is bolstered by the fact that Anthony had already testified about his conviction and sentence in the present case, his probationary status, and that his testimony was part of his plea arrangement.[115] Furthermore, "[h]e acknowledged that he was aware that the District Attorney's Office had control over whether or not to revoke his probation."[116] Because Boyer was allowed to delve into Anthony's arrangements with the State regarding the instant case, it was not objectively unreasonable for a court to find the relevance of the lack of prosecution of the alleged domestic violence to be outweighed by unfair prejudice, confusion or misleading of the jury.

Boyer makes only a conclusory argument that the state appellate court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[117] Therefore he has waived the argument.[118] Boyer also briefly argues for an evidentiary hearing, a request we also find waived. But even if it is not, an evidentiary hearing is not warranted for Boyer's legal claim regarding Anthony's cross-examination. "An evidentiary hearing is not 'required when the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence.'"[119] Although the defense theorizes that the prosecution

---

[115] *Id.* at 1129.

[116] *Id.*

[117] 28 U.S.C. § 2254(d)(2). Boyer contends: "To the extent that the decision rested upon a finding that there was no prospect of re-initiating the prosecution or that the dismissal of the charge was unrelated to the murder case, the decision rests upon a wholly unreasonable determination of the facts."

[118] *JTB Tools & Oilfield Servs., L.L.C. v. United States*, No. 15-60656, 2016 WL 4083905, at *3 (5th Cir. Aug. 1, 2016) ("To avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases.'" (citing *United States v. Skilling*, 554 F.3d 529, 568 n.63 (5th Cir. 2009)); *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (noting that it is "not enough to merely mention or allude to a legal theory")).

[119] *Lawrence v. Lensing*, 42 F.3d 255, 259 (5th Cir. 1994) (citation omitted).

did not bring charges in order to "clean[] up Anthony for trial," Boyer does not make a direct constitutional challenge to the prosecution's failure to bring the charges itself.[120] His constitutional challenge, rather, centers on the inability to present a complete defense and the inability to confront an adverse witness during cross-examination. For the reasons discussed, he cannot prevail on this challenge.

## C.

We finally turn to Boyer's claim regarding the exclusion of Dr. Fulero's testimony. "[C]riminal defendants [must] be afforded a meaningful opportunity to present a complete defense."[121] "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."[122] The Supreme Court has declared that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."[123] Moreover, "the Court has never questioned that 'evidence surrounding the making of a confession bears on its credibility' as well as its voluntariness."[124] Nonetheless, trial judges have "'wide latitude' to exclude evidence that is 'repetitive ..., only marginally

---

[120] Boyer argues at one point that "[t]he defense was unconstitutionally prevented from bringing these challenges to the prosecution's account." He further contends that "to withdraw this issue from the jury based on a wholly unreasonable factual finding (that there was no prospect of prosecution and no cause for bias) without an evidentiary hearing denied the defendant his Due Process rights." However, Boyer's brief emphasizes constitutional error with regard to the limits on Boyer's cross-examination of Anthony. Were Boyer to argue that he was entitled to an evidentiary hearing to explore whether the prosecution intentionally failed to pursue assault charges, Boyer would also need to satisfy the requirements of 28 U.S.C. § 2254(e)(2), or explain why its requirements do not apply. He makes no attempt to do so.

[121] *California v. Trombetta*, 467 U.S. 479, 485 (1984).

[122] *Chambers*, 410 U.S. at 294. The Sixth Amendment guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor."

[123] *Id.* at 302 (citing cases).

[124] *Crane v. Kentucky*, 476 U.S. 683, 688 (1986) (citation omitted).

relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"[125]

The state appellate court reversed the trial court's decision to allow Dr. Fulero to testify on confessions and interrogations. Boyer argues that the validity and credibility of his confession was central to his defense. He avers that the exclusion of Dr. Fulero's testimony constituted the use of a "*per se* rule to bar all psychological evidence relevant to false confessions from trials in Louisiana." This categorical bar, Boyer maintains, violated his constitutional right to, most significantly, present a complete defense. Boyer argues, "[h]ere, as in *Crane*, *Rock*, *Washington*, and *Chambers*, the exclusion of evidence unconstitutionally 'undermined fundamental elements of the defendant's defense.'"[126]

The State responds that Dr. Fulero's testimony did not meet the *Daubert* criteria for admission, arguing each of the *Daubert* factors. The State further contends that the appellate court's interlocutory judgment was not a categorical ban, and that Boyer could have explored the conditions of the interrogation and confession without calling Dr. Fulero. The State asserts that Dr. Fulero's testimony would have confused or misled the jury, and that his testimony "was a waste of time when the jury can make its own determination of the truth or falsity of the petitioner's confession unaided by an expert witness." Finally, the State argues that any error in barring Dr. Fulero from testifying was harmless.

The state appellate court decision is not contrary to any of the Supreme Court precedent cited by Boyer. Boyer cites repeatedly to *Crane v. Kentucky*. In *Crane*, the Supreme Court reversed a ruling that excluded evidence about

---

[125] *Id.* at 689–90 (citation omitted) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

[126] Quoting *Scheffer*, 523 U.S. at 315.

the circumstances of the defendant's confession.[127] Although *Crane* expresses broad propositions about a defendant's right to present a complete defense, its holding was that the "blanket exclusion" of testimony about the defendant's confession violated his right to a fair trial.[128] The state appellate court's decision does not directly conflict with *Crane's* holding, because unlike in *Crane*, the trial ruling in Boyer's case excluded an expert from testifying on confessions and interrogations in general, not the circumstances of Boyer's confession and interrogation in particular.

Nor was the state appellate court decision contrary to *Chambers v. Mississippi*. In that case, a Mississippi trial court excluded evidence from three witnesses that would have testified that another person, McDonald, confessed to the murder for which the defendant, Chambers, was on trial.[129] The trial court also barred the defendant from cross-examining McDonald about McDonald's earlier confession and renunciation of that confession.[130] As a result, "Chambers' defense was far less persuasive than it might have been had he been given an opportunity to subject McDonald's statements to cross-examination or had the other confessions been admitted."[131] The Court held Chambers was deprived of a fair trial, because a "mechanistically" applied hearsay rule could not exclude critical evidence that "was well within the basic rationale" of a hearsay exception.[132] Unlike in *Chambers*, the issue at bar involves the exclusion of expert testimony. Moreover, the excluded expert

---

[127] *Crane*, 476 U.S. at 687.

[128] *Id.* at 690 ("[W]e have little trouble concluding on the facts of this case that the blanket exclusion of the proffered testimony about the circumstances of petitioner's confession deprived him of a fair trial." (citation omitted)); *accord id.* at 691 ("[T]he Kentucky courts erred in foreclosing petitioner's efforts to introduce testimony about the environment in which the police secured his confession.").

[129] *Chambers*, 410 U.S. at 293–94.

[130] *Id.* at 291–92.

[131] *Id.* at 294.

[132] *Id.* at 302–03.

testimony about false confessions and interrogations generally is not direct evidence of the defendant's lack of guilt, unlike the excluded evidence in *Chambers* that the Court deemed "critical."[133]

*Holmes v. South Carolina*, too, is inapposite. That case addressed "whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict."[134] The exclusion of evidence of third-party guilt based on forensic evidence is not implicated here.

Finally, *Rock v. Arkansas* addressed "whether Arkansas' evidentiary rule prohibiting the admission of hypnotically refreshed testimony violated petitioner's constitutional right to testify on her own behalf as a defendant in a criminal case."[135] The Court held that it did.[136] 28 U.S.C. § 2254(d)(1)'s "clearly established law" clause refers Supreme Court holdings.[137] Accordingly, even if one assumes that the Louisiana appellate court's decision is a *per se* ban on interrogation and confession expert testimony, it does not directly conflict with *Rock*'s holding, which concerned hypnotically refreshed testimony. The state appellate court decision is not "contrary to" clearly established Supreme Court law.[138]

---

[133] *Id.* at 302.

[134] *Holmes*, 547 U.S. at 321.

[135] *Rock v. Arkansas*, 483 U.S. 44, 45 (1987); *accord id.* at 49.

[136] *See id.* at 62.

[137] *See Lockyer*, 538 U.S. at 71–72.

[138] Boyer also cites to *Washington v. Texas*, 388 U.S. 14 (1967), which we find inapposite because that case concerned state statutes that barred a coparticipant from testifying for the defendant but not the prosecution. *Id.* at 16–17. The Court held that the defendant "was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23 (footnote omitted). No similar bar was in play here.

No. 16-30487

We next consider whether the state appellate court's decision involved an unreasonable application of Supreme Court law. "A state court's decision constitutes an unreasonable application of clearly established federal law if it is 'objectively unreasonable.'"[139] "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case."[140] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[141] Given this standard, we cannot say the state appellate court's decision was an unreasonable application of Supreme Court law.

The state appellate court decision referred to its pre-trial interlocutory decision barring Dr. Fulero's testimony.[142] That decision stated:

> Allowing expert testimony regarding "false confessions" invades the province of the jury. The jury is most capable of ascertaining the truth and validity *vel non* of confessions--not experts. Allowing such testimony by incrementally allowing experts to eventually testify as to the guilt or innocence of the defendant cannot be allowed.

Boyer claims that this decision constitutes a *per se* ban on "all psychological evidence relevant to false confessions." The State counters that the decision was not a categorical ban, and suggests that in Louisiana there is no such categorical ban on expert testimony on false confessions.

---

[139] *Gray*, 616 F.3d at 439 (citing *Williams*, 529 U.S. at 409).

[140] *Bell*, 535 U.S. at 694 (citation omitted).

[141] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citation omitted).

[142] *Boyer*, 56 So. 3d at 1130. ("However, the record before this court indicates that this court's ruling was made on the merits as presented and nothing has been currently argued that would indicate that the ruling was erroneous.").

No. 16-30487

In *Rock*, the Supreme Court explained that a "State's legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case."[143] Far from upholding or enacting a *per se* ban, the state appellate court's decision excluded Dr. Fulero's testimony in this particular case, and in an unpublished, interlocutory judgment no less.[144] Moreover, the appellate court's exclusion is unlike "Arkansas' *per se* rule excluding all posthypnosis testimony" in *Rock*, which the Court held "infringes impermissibly on the right of a defendant to testify on his own behalf."[145] The Court found the categorical ban "had a significant adverse effect on petitioner's ability to testify," because she could not describe the shooting "except in the words contained in [a doctor's] notes."[146] Such reasoning is not implicated here because Boyer was not categorically barred from testifying himself about his confession or interrogation.

Further, we cannot say that the state appellate court's decision was arbitrary or disproportionate to the purpose the exclusion is designed to serve.[147] That stated purpose was protecting the province of the jury on the question of credibility of a confession and the closely related ultimate issue of guilt or innocence. Still, false confessions occur.[148] And there is an argument

---

[143] *Rock*, 483 U.S. at 61.

[144] Boyer has not directed this Court to any other cases that illustrate the alleged *per se* ban on confessions experts across the state of Louisiana.

[145] *Rock*, 483 U.S. at 62.

[146] *Id.* at 57.

[147] *Scheffer*, 523 U.S. at 308 (States have "broad latitude" to exclude evidence, and "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" (citations omitted)).

[148] *See J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011) (discussing phenomenon of false confessions in custodial police interrogations and emphasizing risks for juveniles); *Hall v. Florida*, 134 S. Ct. 1986, 1993 (2014) (noting risk of false confessions for the intellectually disabled); *Smith v. United States*, 348 U.S. 147, 153 (1954) (noting "the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made" (citation omitted)); *United States v. Belyea*, 159 F. App'x 525, 529 (4th Cir.

not without purchase that the wholesale exclusion of Dr. Fulero's testimony was disproportionate to preserving the jury's province. However, 28 U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."[149] Furthermore, "[c]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable not merely wrong; even clear error will not suffice."[150] Boyer cannot clear this bar; a fairminded jurist could agree with the propriety of the state appellate court's exclusion.[151] Like in *Scheffer*, Dr. Fulero's exclusion "did not preclude [Boyer] from introducing any factual evidence [about his confession]. Rather, [Boyer] was barred merely from introducing expert opinion testimony to bolster his own credibility."[152]

Finally, "an essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude *competent, reliable* evidence bearing on the credibility of

---

2005) (per curiam) (unpublished) ("Jurors may know that people lie in everyday life or even sometimes under oath, particularly when they believe lying to be advantageous. Jurors may not know, however, that people lie on occasion to their own detriment by falsely confessing to crimes that they did not commit. The phenomenon of false confessions is counter-intuitive and is not necessarily explained by the general proposition that 'jurors know people lie.'" (citations omitted)).

[149] *Harrington*, 562 U.S. at 102–03.

[150] *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations and internal quotation marks omitted).

[151] *Compare Scheffer*, 523 U.S. at 313 (Thomas, J., writing for a plurality) (in upholding per se ban on polygraph evidence, stating "[a] fundamental premise of our criminal trial system is that 'the *jury* is the lie detector'" (citation omitted)), *with id.* at 318–19 (Kennedy, J., concurring in the judgment) (disagreeing that "jury's role in making credibility determinations is diminished when it hears polygraph evidence" which "demeans and mistakes the role and competence of jurors in deciding the factual question of guilt or innocence").

[152] *Scheffer*, 523 U.S. at 317 (footnote omitted) (majority opinion).

a confession when such evidence is central to the defendant's claim of innocence."[153] "State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules."[154] Boyer suggests that the state appellate court found that Dr. Fulero's testimony was relevant and reliable, thus satisfying *Daubert*. But the state appellate court made no such finding. Further, this Court has explained that in *Daubert v. Merrell Dow Pharm., Inc.*[155]

> the Supreme Court offered a list of factors that district courts may use in evaluating the reliability of expert testimony. These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community.[156]

The district court in this case concluded that "the Third Circuit evidently found the testimony would be of little value under this test. Based on the witness's own statement that this field could not provide reliable methods for determining whether a confession was false, we are inclined to agree." Given *Daubert*'s "flexible" analysis,[157] we find that fairminded jurists could debate the exclusion of Dr. Fulero under *Daubert* as well. "It bears repeating that even

---

[153] *Crane*, 476 U.S. at 690 (citations omitted) (emphasis added).

[154] *Scheffer*, 523 U.S. at 309 (citing *Daubert*, 509 U.S. at 589; other citation omitted).

[155] 509 U.S. 579, 593–94 (1993).

[156] *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 n.17 (5th Cir. 2016).

[157] *Sims*, 839 F.3d at 400 n.17 (noting that in *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999), "the Supreme Court emphasized that the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'").

No. 16-30487

a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[158]

## IV.

Boyer appealed from the district court's denial of habeas relief on three claims: (1) his Sixth Amendment right to speedy trial was violated; (2) his due process and Confrontation Clause rights were violated when he could not cross-examine Anthony on Anthony's alleged violence; and (3) his rights to present a complete defense and present witnesses were violated when Dr. Fulero was excluded. A seven year delay between arrest and trial is the exception, not the rule, and must remain so. Nevertheless, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[159] Boyer cannot do so here. We AFFIRM the district court.

---

[158] *Harrington*, 562 U.S. at 102 (citation omitted).
[159] *Id.* at 103.

40

No. 16-30487

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I would conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, and that the district court erred in denying habeas relief on the three issues raised by Jonathan Boyer on appeal. Because I would reverse the district court's denial of Boyer's habeas relief, I respectfully dissent.

As set out by the majority, we review the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standard to the state court's decision as the district court. *Higginbotham v. Louisiana*, 817 F.3d 217, 221 (5th Cir. 2016). We also apply the rules of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254(d).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010). Further, a federal habeas writ may issue if the "state court applies a rule different from the governing" federal law. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Finally, "[a] state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable." *Gray*, 616 F.3d at 439.

### I. Speedy Trial Claim

We analyze Boyer's Sixth Amendment speedy trial claim under the four-factor balancing test in *Barker v. Wingo*, 407 U.S. 514 (1972), as follows:

*(1) Length of the delay*

The state appellate court concluded that the length of the delay was presumptively prejudicial. I agree with the majority's conclusion that this finding was reasonable given the seven-year time period between arrest and trial.

41

*(2) Reason for the delay*

The state appellate court found that this factor could not be attributed to either the State or Boyer. I agree with the majority's conclusion that the state appellate court erred in its analysis of this factor, i.e., "the flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). I disagree with the majority as to the weight afforded this factor.

The majority acknowledges that "delay resulting from a systemic breakdown in the public defender system" is weighted against the state. *Vermont v. Brillon*, 556 U.S. 81, 94 (2009). The majority then relies on *Barker* to diminish the weight. *Barker* does say that unexplained or negligent delays may weight against the state less heavily than deliberate delays. *Barker*, 407 U.S. at 531. However, although such a delay may be weighted less heavily than a deliberate delay, the Supreme Court has also clarified that:

> [I]t still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, cf. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its consequent threat to the fairness of the accused's trial.

*Doggett v. United States*, 505 U.S. 647, 657 (1992).

In *Doggett*, the Court also noted that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652, n.1. The Court also specified that presumptive prejudice "simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.* In *Barker*, the Supreme Court determined that over five years "was extraordinary." *Barker*, 407 U.S. at 533. Here, that protractedness was seven years. Thus, the state's

delay several times as long as that generally sufficient to trigger judicial review weights substantially against the state here regardless of whether there is evidence of deliberate delay.  Accordingly, I would conclude that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1).

Further, as both factors one and two of *Barker* weight substantially against the state here, I would conclude that this is sufficient to establish that the ultimate decision of the state court was objectively unreasonable. Notwithstanding that I would grant habeas relief at this point, I also disagree with the majority on the remaining two factors of *Barker*.

*(3) Defendant's assertion of his right*

The state appellate court found that Boyer did not assert his right until after the three-year statutory prescription had tolled, noting that his filing was "more perfunctory than aggressive."  The majority concludes that the state court's decision was not objectively unreasonable because of the timing of Boyer's motions to quash and the arguable lack of prejudice that Boyer has shown.  However, I disagree.

Regardless of the timing of Boyer's motions to quash, there is no dispute that he was without fully-funded counsel for the majority of the seven years, including during the entire three-year time limitation.  As Boyer argues, he asserted his claim at the earliest opportunity under the circumstances.

For these reasons, I would conclude that the state court's decision as to this factor was objectively unreasonable.  As three factors weight against the state, including the essential second factor, I would conclude, again, that the ultimate decision was objectively unreasonable and was contrary to, or involved an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1).

43

No. 16-30487

*(4) Prejudice*

The state appellate court found that Boyer did not explain how he was prejudiced, but did not explicitly credit or reject his arguments. The majority concludes that the state court's decision is not objectively unreasonable. I disagree.

The Supreme Court has explicitly stated, as discussed previously herein, that the "presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. The Court also said:

> Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Id.* at 655-56 (internal citation omitted). Further, the Court said: "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. 647 at 657.

Because of the length of the delay here, there is a strong presumption that Boyer was prejudiced in ways that he would neither be able to prove nor identify.[1] As instructed by the Supreme Court, we do not simply tolerate the delay on the basis of whether Boyer can demonstrate exactly how he was prejudiced. While that presumption alone cannot carry Boyer's Sixth Amendment claim, it is more than sufficient when combined with the other

---

[1] Notwithstanding that Boyer would still prevail even if he is unable to demonstrate exactly how the delay has prejudiced him, he sets out how he was prejudiced.

factors which also weight against the state to establish objective unreasonableness.

Accordingly, I would conclude that the state court decision on this factor was contrary to, or involved an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1). As *Barker* requires the balancing of all four factors, which weight against the state, I would conclude that the ultimate decision of the state court was objectively unreasonable. Thus, Boyer is entitled to habeas relief on his speedy trial claim.

## *II. Exclusion of evidence*

Boyer asserts that the state court's decision to exclude evidence about Anthony's alleged violence and lack of prosecution was contrary to, or involved an unreasonable application of, clearly established federal law.

The majority acknowledges the exception under Louisiana law which allows the very evidence Boyer attempted to present. LA. CODE EVID. ANN. art. 609.1(B). The majority then dismisses the cases cited by Boyer as authority on the basis that they are not factually identical and, thus, not in direct conflict. I disagree.

Regardless of whether state courts have broad latitude in excluding evidence under criminal trials, a defendant is guaranteed a meaningful opportunity to present a complete defense under the Constitution. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *see also Crane v. Kentucky*, 476 U.S. 2142, 2146 (1986). The state appellate court did not address the constitutional issues and merely concluded that the state trial court did not abuse its discretion under Louisiana law. *See State v. Boyer*, 2010-693 (La. App. 3 Cir. 2/2/11); So.3d 1119, 1127-30. While we must still give AEDPA deference, that deference is not without limits.

The Supreme Court has explicitly acknowledged that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that

there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law." *Marshall v. Rodgers*, 133 S.Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The general standards of the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment are well settled. Further, the general standards of the cases cited by Boyer provide clearly established law.

For example, the majority distinguishes *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), on the basis that it involved hearsay.   However, the proposition for which Boyer cites *Chambers*, "where constitutional rights directly affecting the ascertainment of guilt are implicated, [state rules of evidence] may not be applied mechanistically to defeat the ends of justice," is clearly established.   *See Chambers* at 302.   In fact, the majority notes that general standard in a quote from *Holmes*, 547 U.S. at 324-25 ("This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary or disproportionate to the purposes they are designed to serve.'").   Further, while *Chambers* did involve hearsay, it was "coupled with the State's refusal to permit Chambers to cross-examine McDonald." *Chambers* at 302.   In concluding that Chambers was denied a "trial in accord with traditional and fundamental standards of due process," the Court stated, "[i]n reaching this judgment, we establish no new principles of constitutional law." *Id.* This further indicating the general standards at issue are clearly established.

Boyer cites *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) for the proposition that exposing a witness' bias is part of the right to cross examine. The majority concedes that *Davis* supports Boyer's claim that he was unconstitutionally excluded from cross-examining Anthony on the lack of prosecution for domestic violence.   But, the majority then concludes that,

because *Davis* is not factually identical, the state appellate court's decision could not be contrary to it. As set out previously, such a conclusion contradicts *Marshall*, 133 S.Ct. 1446.[2]

Moreover, the state appellate court's decision involved an unreasonable application of federal law. The right of cross-examination is "implicit in the constitutional right of confrontation." *Chambers*, 410 U.S. at 295. The Louisiana Rules of Evidence provide a specific exception that allows the evidence at issue here. *See* LA. CODE EVID. ANN. art. 607(d). *See also State v. Vale*, 95-1230, p.4 (La. 1/26/96); 666 So.2d 1070, 1072; and *State v. Goodlow,* 2000-3488 (La. 11/21/01), 801 So.2d 1065.

For these reasons, I would conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law and infringed on Boyer's Confrontation Clause rights. Additionally, because Boyer established the prejudicial impact of the constitutional error, I would conclude that the error is not harmless.

### III. Exclusion of expert testimony

Boyer asserts that the state appellate court's decision to exclude expert testimony on confessions and interrogations was contrary to, or involved an unreasonable application of, clearly established federal law because it infringed on his rights to present a complete defense and present witnesses in his defense.

Again, the majority concludes the state appellate court decision was not contrary to any of the precedent cited by Boyer. I disagree for many of the same reasons stated above. Additionally, the state appellate court's decision,

---

[2] The majority concludes that *Davis* is distinguishable because it involved the witness' juvenile delinquency adjudication while Anthony had not yet been prosecuted. However, as stated previously, Louisiana law provides an exception for that very circumstance. LA. CODE EVID. ANN. art. 607(d).

quoted by the majority herein, clearly amounted to a blanket exclusion of expert testimony relevant to false confessions.  Moreover, the state appellate court decision involved an unreasonable application of federal law.

States have broad latitude to exclude evidence so long as such rules are "not arbitrary or disproportionate to the purposes they are designed to serve." *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). "Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.*  The Supreme Court has also held that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers, 410 U.S. at 302.  The confession was key to the state's case.  Boyer had a right to present evidence to prove the confession was false.  Accordingly, I would conclude that the exclusion of this evidence infringes upon a weighty interest and, thus, was unconstitutionally arbitrary or disproportionate.

For these reasons, I would conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law and infringed on Boyer's rights to present a complete defense and present witnesses in his defense, and was disproportionate to the purpose of protecting the province of the jury.  Additionally, because Boyer established the prejudicial impact of the constitutional error, I would conclude that the error is not harmless.

Accordingly, I would reverse the district court's denial of habeas relief on all three issues.  Therefore, I respectfully dissent.